6939

BROOKS v. JONES, COMPTROLLER.

APPROPRIATION ACT—REPEAL OF STATUTES—SALARY.—In absence of constitutional inhibition, a salary may be raised by appropriation act beyond amount fixed in statute, so long as the appropriation act is of force, by simply appropriating a larger amount for the salary than fixed by the statute.

Before GARY, J., Richland, May, 1908. Affirmed.

Petition by U. R. Brooks, clerk of Supreme Court, for mandamus against A. W. Jones, Comptroller-General. The following is the Circuit decree:

"This is a proceeding in mandamus, the petitioner, clerk of the Supreme Court, praying for an order requiring the respondent to issue his official warrants on the State Treas-

urer for his salary as said clerk at the rate of one thousand dollars per annum, that being the amount mentioned in the appropriation act of 1908 'for the pay of the clerk of the Supreme Court.' The petitioner contends that he is entitled to $83.33 per month from the first day of January, 1908 (the beginning of the fiscal year).

"The respondent, by his return, attempts to justify his refusal to pay more than $66.66 per month (being at the rate of eight hundred dollars per annum), upon the ground that the salary fixed by law (as found in 21 Stats., 416, now section 2725, Civil Code), is $800, and 'that there is nothing in the appropriation act to indicate that the Legislature intended to change the salary of said clerk,' and, further, because the petitioner, by demanding the increase in his salary from January 1st to February 22d, is demanding extra salary and compensation after service rendered, in contravention of Art. III, sec. 30, Constitution 1895.

"Two questions are presented for decision:

"1. What is the salary of the petitioner as fixed by law for the year 1908? and

"2. When does it begin to run?

"Prior to the appropriation act of 1908 the act of 1893 (as appears from section 2725, Civil Code) made the salary $800, and that amount was specifically and annually appropriated from 1894 to 1907, both inclusive, and such is the salary now unless changed by the appropriation act.

"An appropriation act, though generally in duration temporary, has equal force and effect as a permanent statute for the time being. If approved subsequently to such permanent act, and there is irreconcilable conflict, the latter is suspended during the time the appropriation act is of.force. *U. S.* v. *Mitchell,* 109 U. S., 146; *Buchanan* v. *State Treas.,* 68 S. C., 415, 47 S. E., 683.

"If an appropriation act appears to increase or diminish the salary provided in a permanent salary act, the former controls (if there be no constitutional prohibition violated), provided it is apparent that it was the intention of the

Legislature to make the change. 'The whole question depends on the intention as expressed in the (appropriation) statutes.' *U. S.* v. *Mitchell, supra; Belknap* v. *U. S.,* 150 U. S., 588; *Buchanan* v. *State Treas., supra.*

"We find, among others in this act, three instances of appropriations in excess of the amount stated as salaries in prior acts, namely, for the petitioner, for the chief clerk of the Comptroller-General, and for the Governor's private secretary. The salaries for these are not named by the Constitution, nor is there any constitutional restriction upon the right of the Legislature to change these salaries from time to time.

"Now, what was the intention of the Legislature when it said, in section 1 (1) 'for the salary of the Governor's private secretary, $1,500; * * * (2) for the salary of the chief clerk of the Comptroller-General, $1,500;' section 2 * * * 'for the pay of the clerk of the Supreme Court, $1,000?'

"The respondent answers, that it is expressly provided in these sections that those amounts are appropriated 'if so much be necessary,' and that, for instance, $1,000 is appropriated for the clerk only in case it is necessary to expend $1,000 in paying $800.

"The necessity for construing the words 'if so much be necessary' is recognized. An inspection of section 1 will disclose the fact that every one of the fourteen subsections thereof, relating to the expenditures by heads of departments, mentions, *eo nomine, 'the contingent fund,'* besides specifying such items of indeterminate expenses, as stationery, stamps, printing, etc. Section 2, Judicial Department, also provides 'for a contingent fund for the Supreme Court,' and also $600 for the purchase of a series of reports not yet published. It is evident to my mind that the words 'if so much be necessary' were intended to apply only to such items the exact cost of which no experience, investigation, knowledge or foresight could determine, and not to salaries known to the Legislature to be already fixed by law, and which could, at the will of that body, expressed in an appro-

priation act, be raised or lowered to a definite amount. The presumption is that the Legislature knew that the salary act of 1893 (effective 1894) fixed the salary of the petitioner at $800, and of the two employees above mentioned at $1,350, and that for fourteen years those sums were appropriated; therefore, I cannot bring my mind to conclude that the General Assembly apprehended that it was at all contingent whether or not $1,000 was 'so much as necessary' to pay $800. Appropriation acts are most carefully prepared and intelligently considered.

"It was the same Legislature which sat in 1907 and 1908, they being its first and second sessions. In 1907 it appropriated $800 for petitioner, $1,350 for the Comptroller-General's clerk, and $1,350 for the Governor's private secretary, as had been done for thirteen sessions before, in accordance with the salary act; but in 1908 this same General Assembly, with the previous act still among its records, increases the amounts, $800 to $1,000, and $1,350 to $1,500. This action can be explained only upon the theory (which, of course, cannot be entertained) that the Legislature was ignorant of the amounts specified in the salary act, and, by way of precaution, appropriated so much as it was guessed would cover them.

"The respondent calls attention to the words in the act, 'which shall be the salary for the year 1908,' used in connection with the increased appropriation for the salaries of the Assistant Attorney-General, the Treasurer's bookkeepers, and the clerk of the Superintendent of Education. But the same Legislature the year before (1907) appropriated, for this last named employee, without any such words, $1,200 (as had been done since 1901), which was $300 in excess of the act of 1896 fixing that clerk's salary at $900.

"This means of increasing salaries by means of appropriation acts is not without precedent. For instance, the fixed salary of the clerk of the Superintendent of Education was, by the act of 1896 (section 1177, Code), $900, but it was raised by simple appropriation, in 1901, to $1,200, and this

amount annually appropriated for the next six years. The salary of the physician of the penitentiary was fixed by the salary act of 1893 at $1,050, and this was paid annually until 1907, when the sum of $1,500 was appropriated, as was done in 1908 by the same Legislature. The captain of the guard, by the act of 1893, was provided an annual salary of $1,050, which was appropriated annually until 1904, when by the appropriation act it was raised to $1,200, which has been appropriated annually since, including 1908.

"I find the salary for the clerk of the Supreme Court, as fixed by law, to be $1,000 for the year 1908.

"As the act is 'to make appropriations to meet ordinary expenses of the State government for the fiscal year commencing January 1, 1908,' I am of the opinion that the salary of $1,000 begins on said first day of January; and as section 9 of the act prescribes that the amounts specified 'for salaries and clerical services shall be paid in monthly installments, unless otherwise provided for,' the petitioner is entitled to one-twelfth of $1,000 per month from said date.

"The petitioner admits that he has received for January $66.66, for February $71.25, and for March $83.33, and contends for a balance of $16.67 for January, and $12.08, as well as for $83.33, for the month of April. This contention is sustained, and it is therefore ordered:

"That the respondent, the Hon. A. W. Jones, as Comptroller-General, do issue his official warrant or warrants on the State Treasurer in favor of the petitioner, U. R. Brooks, clerk of the Supreme Court, for the sum of $112.08, being in full of salary up to May 1, 1908."

From this decree the Comptroller-General appeals.

*Attorney-General J. Fraser Lyon,* for appellant, cites: Code 1902, 2725; 37 Cen. Dig., sec. 132; 15 Ct. Cl., 22; 64 Ala., 282; 57 Tex., 200; 118 U. S., 389; 35 Fed., 889; 109 U. S., 150; 150 U. S., 588; 23 Ency., 388; sec. 30, Art. III, Con.

*Messrs. Bellinger & Welsh,* contra, cite: 118 U. S., 389;
150 U. S., 588.

July 7, 1908.    The opinion of the Court was delivered by

MR. JUSTICE GARY.    This is an appeal from an order of
the Circuit Judge in mandamus proceedings, requiring the
Comptroller-General to issue his warrant or warrants on
the State Treasurer in favor of the petitioner for the amount
therein mentioned, being in full of salary up to 1st May,
1908.

The facts are fully set out in said order, which is affirmed
for the reasons therein stated.

MR. CHIEF JUSTICE POPE *concurs.*

MR. JUSTICE JONES.    In this case the Circuit Court
granted a mandamus to compel the Comptroller-General to
issue his warrant to petitioner for $112.08, as balance of sal-
ary claimed to be due him from January 1, 1908, to May 1,
1908.    The contention of petitioner is that he is entitled to
a salary of $83.33 per month, or $1,000 per year, from Jan-
uary 1, 1908, whereas the contention of the Comptroller-
General is that petitioner is entitled to a salary of $66.66 per
month, or $800 per year, from January 1, 1908.  It is
admitted that the petitioner has received $66.66 for Jan-
uary, $71.25 for February, and $83.33 for March.    He is
claiming a balance of $16.67 for January, $12.08 for Feb-
ruary, and $83.33 for April.    On May 1, when he applied
for warrant for $83.33 for April, the Comptroller-General
declined to issue warrant except for such sum as would be
due at the rate of $66.66 per month, after deducting the
excess of that rate paid for February and March.

Section 2725 of Civil Code provides that salary of the
clerk of the Supreme Court "shall be $800 per annum, to be
paid out of the State Treasury on the warrant of the Comp-

troller-General." This salary has been paid to petitioner under annual appropriations since his appointment to office, in December, 1894. The appropriation act, approved February 22, 1908, contained these provisions:

Section 2. "Judicial Department.—That the following sums, if so much be necessary, be, and the same are hereby, appropriated to meet the expenses of the Judicial Department: * * * for the pay of the clerk of the Supreme Court, $1,000; * * *"

Section 9. "That the amounts specified in the preceding sections of this act, for salaries and clerical services, shall be paid in monthly installments, unless otherwise provided for, and shall be paid upon warrants of the Comptroller-General, on the application of the various officers entitled to the same; * * *"

Section 13. "That this act shall take effect from and immediately after its approval."

Section 16. "That all acts and parts of acts inconsistent with the provisions of this act be, and the same are hereby, repealed."

After much doubt, I haye reached the conclusion that sections 2 and 9, construed together, show an intention to pay the amount specified, $1,000, in monthly installments of $83.33 as salary of the clerk of the Supreme Court.

It is competent for the Legislature, by means of an appropriation act, to increase or lessen the salary of an officer (where there is no constitutional inhibition), provided the intent to do so may be fairly inferred from the language of the statute. *Belknap* v. *U. S.*, 150 U. S., 588, citing cases including *U. S.* v. *Langston*, 118 U. S., 389; *Buchanan* v. *Treasurer*, 68 S. C., 415, 47 S. E., 978. When such intention is clearly manifest, the appropriation statute is considered to be in conflict with a previous statute fixing such salary and to operate so as to suspend the previous general statute during the currency of the appropriation statute.

But the appropriation act in this case could not operate to suspend or repeal section 2725, providing a salary of $800

for the clerk of the Supreme Court, until February 22, 1908. Hence, the salary due by law to said clerk from January 1, 1908, to February 22, 1908, was at the rate of $66.66 per month. If the appropriation act of February 22, 1908, should be construed as increasing the clerk's salary retroactively and after services rendered, it would be in violation of Article III, section 30, of the Constitution, which declares: "The General Assembly shall never grant extra compensation, fee or allowance to any public officer, agent, servant or contractor after services rendered or contract made," etc.

In view of the constitutional limitation, the proper construction of the appropriation act is to increase the salary of the clerk of the Supreme Court to $83.33 per month during the year 1908 from February 22, 1908. The petitioner having received all the compensation he was entitled to by law up to April 1st, he was entitled to mandamus only to the extent of compelling the Comptroller-General to issue warrant for $83.33 for the month of April.

To this extent the judgment of the Circuit Court should be modified.

MR. JUSTICE WOODS *concurs in this opinion.*