19201

STATE *ex rel.* Daniel R. McLEOD, Individually and as Attorney
General of the State of South Carolina, Plaintiff, v. John Henry
MILLS, Comptroller General *et al.*, Defendants.

(180 S. E. (2d) 638)

*Julius W. McKay, Esq., McKay, McKay, Black, Sherrill, Walker & Wilkins,* of Columbia, *for Plaintiff,*

*Harry M. Lightsey, Jr., Esq., Berry, Lightsey, Gibbs* and *Bowers,* of Columbia, *for Defendants,*

April 13, 1971.

Moss, Chief Justice:

This action is one under the "Uniform Declaratory Judgments Act", Section 10-2001 *et seq.,* 1962 Code of Laws, brought, with permission, in the original jurisdiction of this court. The purpose of the action is to determine the annual salaries of the Constitutional Officers of this State, who are parties to this action. The controversy arises out of the provisions of two acts passed by the General Assembly relative to these salaries.

The General Assembly of this State, at its 1969 session, by Act No. 349, 56 Stat. 595, approved June 24, 1969, provided in Part II, Permanent Provisions, Section 15 thereof, the following:

"The appropriate sections of the 1962 Code relating to salaries of the Constitutional Officers of the State Govern-

ment, as amended, are hereby further amended so as to fix the following salaries for such officers, to be effective with the beginning of the regular term following the general election to be held in November, 1970: Governor $35,000.00, Lieutenant Governor $15,000.00, Secretary of State $30,-000.00, Comptroller General $30,000.00, Attorney General $30,000.00, State Treasurer $30,000.00, Adjutant General $30,000.00, Superintendent of Education $30,000.00."

The General Assembly, at its 1970 Session, by Act No. 984, 56 Stat. 2085, approved April 1, 1970, such being the General Appropriations Act, for the fiscal year commencing July 1, 1970, and ending June 30, 1971, in Part I of said Act, provided line appropriations as salaries for the parties to this action, the following: Governor $25,000.00. Lieutenant Governor $7,500.00, Secretary of State, Comptroller General, Attorney General, State Treasurer, Adjutant General and Superintendent of Education $20,000.00 each.

It was further provided in the 1970 Appropriations Act, that:

"All Acts or parts of Acts inconsistent with any of the provisions of Part I of this Act are hereby suspended for the fiscal year 1970-71."

The plaintiff and the defendants were elected to their respective offices at the general election held on November 3, 1970. All of these Constitutional Officers qualified and were installed in their respective offices on January 19, 1971. At that time the question arose as to whether they should be paid salaries pursuant to the provisions of the permanent statute, Section 15 of Act No. 349, or in accordance with the line appropriations set forth in the General Appropriation Act of 1970. The Comptroller General determined that the salaries should be computed in accordance with the provisions of the permanent statute. This action followed and the Comptroller General and State Treasurer were enjoined *pendente lite* from making payments of compensation to the Constitutional Officers, except in accordance with the Gen-

eral Appropriation Act of 1970, pending the determination by this court of their entitlement to the compensation fixed in the permanent statute.

We are called upon here to decide whether the 1970 General Appropriation Act repealed or suspended the permanent statute fixing the salaries of the Constitutional Officers.

There are two ways of repealing a statute, one is by express terms and the other is by implication, and it is only in one of these ways that a statute can be repealed. It is well settled that repeal by implication is not favored and act should not be construed as impliedly repealing a prior act unless no other reasonable construction can be applied. *Lewis v. Gaddy*, 254 S. C. 66, 173 S. E. (2d) 376. A careful study of the 1970 General Appropriation Act convinces us that the General Assembly did not intend to repeal the permanent statute either expressly or by implication.

We have held that the first rule of construction in the interpretation of statutes is that of intention on the part of the legislature and where the terms of the statute are clear and not ambiguous, there is no room for construction, and courts must apply them according to their literal meaning. *Jones v. South Carolina State Highway Department*, 247 S. C. 132, 146 S. E. (2d) 166.

The legislature has in plain and clear language, in the 1970 Appropriations Act, said: "That all Acts or parts of Acts inconsistent with any of the provisions of Part I of this Act are hereby suspended for the fiscal year 1970-71." There are no ambiguities in the wording of this portion of the Act and such should be given its plain, ordinary and literal meaning. It thus appears that the above quoted section of the Appropriations Act is explicit and expresses the legislative intent that the increase in salaries for the Constitutional Officers, as contemplated by the permanent statute, must be regarded as "suspended" during the fiscal year 1970-71. We, therefore, conclude that it was the

intent of the legislature to temporarily suspend, until July 1, 1971, rather than repeal, the provisions of the permanent statute relating to the salaries of the Constitutional Officers. There is no doubt that the legislature has the power, where there is no constitutional prohibition, to suspend the operation of a statute. When such intention is clearly manifest this court has no choice but to give force and effect thereto.

There is a material difference between the repeal and the suspension of a statute. A repeal puts an end to the statute; a suspension holds it in abeyance. The question of whether the later Appropriation Act suspends or repeals an existing permanent salary statute has been considered by our court. The aforementioned question was specifically dealt with in the case of State *ex rel. Buchanan v. State Treasurer,* 68 S. C. 411, 47 S. E. 683, which is here controlling. In the *Buchanan* case it appears that on December 22, 1893, the legislature passed a statute known as the Salary Reduction Act, which lowered the salary of State Officers, including circuit judges. On the following day the General Appropriations Act was approved fixing the same salary for circuit judges as had been provided in the Appropriations Act for the previous year and in excess of the salary specifically fixed by the Salary Reduction Act. At that time the fiscal year was from November 1 to October 31. Our court dealt specifically with the question of what effect the subsequent General Appropriations Act had on the prior Salary Reduction Act and how to resolve the apparent conflict between the two Acts. The court said:

"If, by any reasonable construction, the two statutes can stand together, they must so stand. If harmony is impossible, and only in that event, the former law is repealed in part, or wholly, as the case may be. See Endlich on Statutes, sec. 210. Where two statutes are passed at the same session, there is a still stronger presumption that they are intended to harmonize and not conflict, and it is the duty of the court to consider them, as far as possible, one statute, and endeavor to find what appears to have been the intent of the

legislative body. Therefore the salary reduction bill, having been approved December 22, 1893, must be regarded amended and changed by the appropriation act passed the next day, so far as the two acts are in conflict. *Riggs v. Pfister,* 21 Ala. 469; *Townsend v. Little,* 109 U. S. 504, 3 S. Ct. 357, 27 L. Ed. 1012. The reduction of salaries contemplated by the former act must therefore be regarded suspended during the period the latter act provided for payment of the larger salary."

In the case of *Brooks v. Jones,* 80 S. C. 443, 61 S. E. 946, the court reached a similar conclusion, saying:

"An appropriation act, though generally in duration temporary, has equal force and effect as a permanent statute for the time being. If approved subsequently to such permanent act, and there is irreconcilable conflict, the latter is suspended during the time the appropriation act is of force. *United States v. Mitchell,* 109 U. S. 146, 3 S. Ct. 151, 27 L. Ed. 887; *State ex rel. Buchanan v. State Treas.,* 68 S. C. 411, 415, 47 S. E. 683.

"If an appropriation act appears to increase or diminish the salary provided in a permanent salary act, the former controls (if there be no constitutional prohibition violated), provided it is apparent that it was the intenion of the Legislature to make the change. The whole question depends on the intention as expressed in the (appropriation) statutes. *United States v. Mitchell, supra; Belknap v. United States,* 150 U. S. 588, 14 S. Ct. 183, 37 L. Ed. 1191; *State ex rel. Buchanan v. State Treas., supra.*"

What was said in the *Buchanan* and *Brooks* cases was quoted with approval in *Plowden v. Beattie,* 185 S. C. 229, 193 S. E. 651.

It is our conclusion, under the authority of the above cited cases, that it was not the intention of the legislature to repeal the permanent statute dealing with the salaries of the Constitutional Officers but rather to suspend the provisions thereof.

The Constitution of 1895, Art. X, Section 10, provides, "The fiscal year shall commence on the first day of July in each year." In accordance with this provision of the Constitution, the General Assembly, by the Act approved April 1, 1970, made appropriations to meet the ordinary expenses of the State government for the fiscal year beginning July 1, 1970, and ending June 30, 1971, and no further. As is heretofore stated, it was in this Appropriations Act that Acts or parts of Acts inconsistent with the appropriations made were suspended only for the fiscal year 1970-1971. It is our conclusion that the permanent statute was suspended only during the time that the Appropriations Act was in force and such suspension, by the terms of the Appropriations Act, ends on June 30, 1971. This was the clear intention of the legislature. On July 1, 1971, the permanent statute would become effective and the Constitutional Officers would be entitled to the salaries provided in the permanent statute.

The plaintiff contends that the aforesaid result violates the provisions of the South Carolina Constitution, Art. IV, Sections 13 and 24, which provides that the compensation of the Constitutional Officers "shall be neither increased nor diminished during the period for which they shall have been elected." It is contended that the salaries established by the Appropriations Act of 1970-71, for the Constitutional Officers, being in effect at the time they qualified for their respective offices, will be their salaries during the entire term of office. We disagree.

The permanent statute fixing the salaries of the Constitutional Officers was enacted prior to their election and qualification, and the Appropriations Act, approved April 1, 1970, only suspended the operation of the permanent statute during the fiscal year 1970-71. To adopt the contention advanced by the plaintiff would be contrary to the intent of the legislature as expressed in the Appropriations Act. The permanent statute increases the salaries of the Constitutional Officers but such does not violate the constitutional prohibi-

tion because the permanent statute fixing the salaries and the Act suspending the effectiveness thereof were not enacted during the term of office to which they had been elected. An act suspended for a fixed period of time becomes effective automatically and without re-enactment, on the expiration of that period. What the court said in the *Buchanan* case is here applicable, and we quote therefrom the following:

"As already intimated, as soon as the conflict can be regarded, in any reasonable view, at an end, it is the duty of the court to give to the former statute, as a separate enactment, full force, both as to the time when it shall have effect and as to its subject-matter."

In several cases construing constitutional provisions similar to ours, the Supreme Courts of other states have held that salaries may vary during the term of office so long as they were fixed prior to the commencement of such term of office. *State ex rel. Mack v. Guckenberger,* 139 Ohio St. 273, 39 N. E. (2d) 840; *State ex rel. Harvey v. Linville,* 318 Mo. 698, 300 S. W. 1066; *State ex rel. Moss v. Hamilton,* 303 Mo. 302, 260 S. W. 466; and *Board of Com'rs of St. Joseph County v. Crowe,* 214 Ind. 437, 15 N. E. (2d) 1016. In the last cited case, the Supreme Court of Indiana said:

"The foregoing provision of the Constitution, prohibiting a change of salary of an officer during his term of office, does not require that the salary of an officer shall be uniform throughout his term. It requires only that there shall be no differences in his salary during the different parts of his term, except such as result from the operation of a law enacted prior to his election or appointment."

The plaintiff contends that the court is without authority to require the legislature to provide funds for salary increases when the legislature itself has not appropriated funds for such purpose. It is unnecessary for us to consider such question because we have held that the salaries provided for in the permanent statute only become effective July 1, 1971. The Appropriation Act, which we have here considered, will have

no effect upon what appropriations may be required for the fiscal year 1971-1972. However, we do call attention that a permanent continuing statute, such as is involved in this case, fixing the compensation of a public officer, is a valid appropriation for the salaries provided in such statute. *Grimball v. Beattie,* 174 S. C. 422, 177 S. E. 668.

For the reasons set forth herein, the plaintiff and defendants are entitled to compensation, beginning on July 1, 1971, as provided by the terms of Act No. 349, 56 Stat. 595, approved June 24, 1969. The temporary restraining order heretofore issued is dissolved.

All of which is duly ordered.

LEWIS, BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.