718 S.E.2d 432

BEAUFORT COUNTY, Scott Marshall, individually and as Director of the Beaufort County Board of Elections and Registration, Chester County, James E. Moore, Sr., individually and as Director of the Registration and Election Commission of Chester County, Greenville County, Joseph Conway Belangia, Jr., individually and as Director of the Greenville County Election Commission and Greenville County Board of Registration, Spartanburg County, Henry M. Laye, III, individually and as Director of Spartanburg County Election Commission, Petitioners,

v.

SOUTH CAROLINA STATE ELECTION COMMISSION, Marci Andino, as Executive Director of the South Carolina State Election Commission and as a representative of the South Carolina State Election Commission, South Carolina Republican Party, Chad Connelly, as Chairman of the Executive Committee of the South Carolina Republican Party and as a representative of the South Carolina Republican Party, the South Carolina Democratic Party, and Richard A. Harpootlian, as Chair of the Executive Committee of the South Carolina Democratic Party and as a representative of the South Carolina Democratic Party, Respondents.

Glenn F. McConnell, in his capacity as President Pro Tempore of the South Carolina Senate, and Robert W. Harrell, Jr., in his capacity as Speaker of the South Carolina House of Representatives, Respondents–Intervenors.

No. 27069.

Supreme Court of South Carolina.

Heard Nov. 14, 2011.

Decided Nov. 22, 2011.

Joel W. Collins, Jr., Christian Stegmaier, and James L. Floyd, III, all of Collins & Lacy, of Columbia, for Petitioners.

Attorney General Alan Wilson, Deputy Attorney General Robert D. Cook, Assistant Deputy Attorney General J. Emory Smith, and Assistant Attorney General J.C. Nicholson, III, of Columbia, for Respondents South Carolina State Election Commission, Marci Andino, as Executive Director of the South Carolina State Election Commission and as a representative of the South Carolina State Election Commission; Kevin A. Hall, Karl S. Bowers, Jr., and M. Todd Carroll, all of Hall & Bowers, of Columbia, for Respondents South Carolina Republican Party, Chad Connelly, as Chairman of the Executive Committee of the South Carolina Republican Party and as a representative of the South Carolina Republican Party; John T. Lay, Jr., of Gallivan, White & Boyd, of Columbia, for Respondents the South Carolina Democratic Party, and Richard A. Harpootlian, as Chair of the Executive Committee of the South Carolina Democratic Party and as a representative of the South Carolina Democratic Party; Michael R. Hitchcock and John P. Hazzard, V, for Respondent–Intervenor Glenn F. McConnell, in his capacity as President Pro Tempore of the South Carolina Senate; and Bradley S. Wright, and Charles F. Reid, of Columbia, for Respondent–Intervenor Robert W. Harrell, Jr., in his capacity as Speaker of the South Carolina House of Representatives.

Robert E. Lyon, Jr., M. Clifton Scott, and John K. DeLoache, of Columbia, for Amicus Curiae South Carolina Association of Counties.

## JUDGMENT FOR RESPONDENTS

Chief Justice TOAL.

Petitioners seek a declaration from this Court in its original jurisdiction that the General Assembly has neither authorized the State Election Commission or the County Election Commissions to conduct a Presidential Preference Primary in 2012, nor mandated that petitioners bear the financial burden of conducting the primary. Because we are firmly persuaded that the General Assembly, through passage of Provisos 79.6 and 79.12 for fiscal year 2011–2012, intended to suspend the temporal limitation in S.C.Code Ann. § 7–11–20(B)(2) (Supp. 2010), we enter judgment for respondents.

## FACTS

The South Carolina Republican Party has scheduled a Presidential Preference Primary for January 21, 2012. In the 2011–2012 Appropriations Act, the General Assembly provided that filing fees received from candidates to run in primary elections may be used by the State Election Commission to conduct the 2012 Presidential Preference Primary elections. Act No. 73, 2011 S.C. Acts § 79.6. In addition, the State Election Commission is authorized to use funds originally appropriated for ballot security to conduct the Presidential Preference Primary elections and the statewide primaries and runoffs. Act No. 73, 2011 S.C. Acts § 79.12.

Petitioners contend the General Assembly has not authorized the State Election Commission or the County Election Commissions to conduct a Presidential Preference Primary in 2012 or any election cycle thereafter. In addition, petitioners argue the amount set forth in the Appropriations Act will be insufficient to cover the actual costs to the counties of conducting the 2012 primary.

## QUESTIONS PRESENTED

I. Are the State Election Commission and the County Election Commissions authorized and required to conduct a 2012 Presidential Preference Primary?

II. Has the General Assembly appropriated sufficient funds for the State Election Commission and the County Election Commissions to conduct a 2012 Presidential Preference Primary?

## ANALYSIS

### I. Authorization and Requirement to Conduct Presidential Preference Primary

South Carolina Code Ann. § 7–11–20(B)(2) provides, in part: *For the 2008 election cycle,* if the state committee of a certified political party which received at least five percent of the popular vote in South Carolina for the party's candidate for President of the United States decides to hold a presidential preference primary election, the State Election Commission *must conduct* the presidential preference pri-

mary in accordance with the provisions of this title and party rules provided that a registered elector may cast a ballot in only one presidential preference primary. However, notwithstanding any other provision of this title, (a) the State Election Commission and the authorities responsible for conducting the elections in each county shall provide for cost-effective measures in conducting the presidential preference primaries including, but not limited to, combining polling places, while ensuring that voters have adequate notice and access to the polling places; and (b) the state committee of the party shall set the date and the filing requirements, including a certification fee.... Political parties may charge a certification fee to persons seeking to be candidates in the presidential preference primary for the political party. A filing fee not to exceed twenty thousand dollars, as determined by the State Election Commission, for each candidate certified by a political party must be transmitted by the respective political party to the State Election Commission and must be used for conducting the presidential preference primaries.

(emphasis added). Section 7–11–20(B)(4) states, "Nothing in this section prevents a political party from conducting a presidential preference primary *for the 2008 election cycle* pursuant to the provisions of Section 7–11–25." (emphasis added).[1]

■ Although Petitioners admit these provisions authorized the State Election Commission and the County Election Commissions to conduct the 2008 Presidential Preference Primaries, they argue these provisions applied only to the 2008 primaries and not to any subsequent primaries. Accordingly, petitioners contend the State Election Commission and the County Election Commissions have no authority to conduct the 2012 Presidential Preference Primary or any future Presidential Preference Primaries. Petitioners argue the statute should be construed to create a limited exception, solely for

---

**1.** Section 7–11–25 provides, "Except for the provisions of Section 7–11–20 related to presidential preference primaries, nothing in this chapter nor any other provision of law may be construed as either requiring or prohibiting a political party in this State from conducting advisory primaries according to the party's own rules and at the party's expense."

the 2008 election cycle, to the traditional practice of political parties conducting their own Presidential Preference Primaries.

We would agree with Petitioners if § 7–11–20(B)(2) were the only expression of legislative intent before us. But, as discussed below, we must consider the operative budget provisos for the current fiscal year, as well as our precedent that speaks to the relationship of a legislative proviso juxtaposed to a permanent statute.

■■■ The primary rule of statutory construction is to ascertain and give effect to the intent of the General Assembly. *Town of Mt. Pleasant v. Roberts,* 393 S.C. 332, 342, 713 S.E.2d 278, 283 (2011). This Court has held that a statute shall not be construed by concentrating on an isolated phrase. *Laurens County Sch. Dists. 55 & 56 v. Cox,* 308 S.C. 171, 174, 417 S.E.2d 560, 561 (1992) ("The true guide to statutory construction is not the phraseology of an isolated section or provision, but the language of the statute as a whole considered in the light of its manifest purpose. In applying the rule of strict construction the courts may not give to particular words a significance clearly repugnant to the meaning of the statute as a whole, or destructive of its obvious intent."); *see also Sloan v. S.C. Bd. of Physical Therapy Exam'rs,* 370 S.C. 452, 468, 636 S.E.2d 598, 606–07 (2006) ("A statute as a whole must receive practical, reasonable, and fair interpretation consonant with the purpose, design, and policy of lawmakers."). "All rules of statutory construction are subservient to the one that the legislative intent must prevail if it can be reasonably discovered in the language used, and that language must be construed in light of the intended purpose of the statute." *State v. Sweat,* 386 S.C. 339, 350, 688 S.E.2d 569, 575 (2010). Moreover, it is well settled that statutes dealing with the same subject matter are *in pari materia* and must be construed together, if possible, to produce a single, harmonious result. *Joiner ex rel. Rivas v. Rivas,* 342 S.C. 102, 109, 536 S.E.2d 372, 375 (2000).

Section 7–11–20(B)(2) is included in the permanent laws of this state. Following the limitation to the 2008 election cycle, § 7–11–20(B)(2) speaks more broadly to a general application, where it states in part, "[h]owever, notwithstanding any other

provision of this *title* ...." (emphasis added). The statute must be construed in light of the entirety of Chapter 11 of Title 7. Although the body of § 7–11–20(B)(2) refers to the 2008 election cycle, the title of the act does not indicate that the General Assembly intended to limit the provisions to 2008. Instead, the title states the act is:

AN ACT TO AMEND SECTIONS 7–11–20 AND 7–13–15, BOTH AS AMENDED, CODE OF LAWS OF SOUTH CAROLINA, 1976, RELATING TO PARTY CONVENTIONS AND PARTY PRIMARY ELECTIONS CONDUCTED BY THE STATE ELECTION COMMISSION AND COUNTY ELECTION COMMISSIONS, SO AS TO PROVIDE THAT THE STATE ELECTION COMMISSION CONDUCT PRESIDENTIAL PREFERENCE PRIMARIES, THAT THE STATE COMMITTEE OF THE PARTY SET THE DATE, FILING REQUIREMENTS AND CERTIFICATION FEE FOR THE PRESIDENTIAL PREFERENCE PRIMARIES, TO PROVIDE A PROCEDURE FOR VERIFICATION OF THE QUALIFICATION OF CANDIDATES, TO CLARIFY CERTAIN EXISTING PROVISIONS CONCERNING PRIMARIES, AND TO SPECIFY WHICH PRIMARIES MUST BE CONDUCTED BY THE STATE ELECTION COMMISSION AND COUNTY ELECTION COMMISSION; TO DESIGNATE SECTION 14 OF ACT 253 OF 1992 AS SECTION 7–11–25, RELATING TO POLITICAL PARTIES NOT PROHIBITED FROM CONDUCTING PRESIDENTIAL PREFERENCE OR ADVISORY PRIMARIES, SO AS TO DELETE THE REFERENCES TO PRESIDENTIAL PREFERENCE PRIMARIES; AND BY ADDING SECTION 7–9–110 SO AS TO AUTHORIZE A POLITICAL PARTY OR STATE ELECTION COMMISSION TO CONDUCT A PRIMARY OR ELECTION, WITHOUT CHARGE, IN A FACILITY THAT RECEIVES STATE FUNDS FOR SUPPORT OR OPERATION.

■ A recent opinion of the Attorney General states the statute is a permanent statute and is not limited to the 2008 Presidential Preference Primary. 2011 Op. Att'y Gen. dated June 27, 2011, 2011 WL 2648710. The opinion refers to the

fact that the title does not contain the 2008 limitation [2] as well as the fact that the statute was codified at the direction of the General Assembly in the permanent laws of the State rather than as a local or temporary law. *Id.* We agree with the Attorney General insofar as he recognizes the statute was codified by the General Assembly as a permanent statute and the title contains no temporal limitation. However, absent the current provisos, the temporal limitation in § 7–11–20(B) would be respected. This brings us to discerning legislative intent and the effect of Provisos 79.6 and 79.12.

We reject any suggestion that the entirety of § 7–11–20(B) is meaningless when viewed through the lens of the current budget provisos. As noted, § 7–11–20(B) is a permanent statute. We hold the provisos of the 2011–2012 Appropriations Act allowing the State Election Commission to use funds toward a Presidential Preference Primary suspend the temporal limitation of § 7–11–20(B) and authorize the State Election Commission and the County Election Commissions to conduct a Presidential Preferential Primary in 2012.

Proviso 79.6 provides:

Filing fees received from candidates filing to run in state-wide or special primary elections may be retained and expended by the State Election Commission to pay for the conduct of primary elections. Any balance in the filing fee accounts on June thirtieth, [sic] of the prior fiscal year may be carried forward and expended for the same purposes during the current fiscal year. In addition, any balance in the Primary and General Election Accounts on June thirtieth, [sic] of the prior fiscal year may be carried forward and expended for the same purposes during the current fiscal year. In addition, the aforementioned funds may also be utilized *to conduct the 2012 Presidential Preference Primary elections.*

(emphasis added). Proviso 79.12 provides, "The State Election Commission is authorized to carry forward and *use funds* originally appropriated for Ballot Security *to conduct* the 2012

---

2. This Court may, of course, consider the title or caption of an act in determining the intent of the Legislature. *Joytime Distrib. & Amusement Co., Inc. v. State,* 338 S.C. 634, 528 S.E.2d 647 (1999).

Presidential Preference Primary elections and the 2012 State-wide Primaries/Runoff." (emphasis added).

As a permanent statute, the portions of § 7–11–20(B)(2) which do not conflict with the 2011–2012 Appropriations Act remain viable. Only the terms of that section which conflict with the current budget are suspended. *State ex rel. McLeod v. Mills*, 256 S.C. 21, 26, 180 S.E.2d 638, 640 (1971) (finding only the provisions of the permanent statute that conflicted with the budget provisos were suspended during the fiscal year). We must reject petitioners' invitation to view the statute and budget provisos in isolation, a position which violates our rules of statutory construction. We must not only seek to discern legislative intent from all lawful enactments of the General Assembly—the statutory scheme *and* budget provisos—but we must also respect our settled law that suspends a conflicting permanent statutory provision while a proviso is in effect. *Id.* Accordingly, only the language limiting that section to the 2008 election cycle must be stricken as that is the only provision of the statute in conflict with the current budget provisos.

Moreover, we cannot ignore the final provision of the 2011–2012 Appropriations Act in which the General Assembly stated, "All acts or parts of acts inconsistent with any of the provisions of Parts IA or IB of this act are suspended for Fiscal Year 2011–2012." By passing the relevant budget provisos, the General Assembly, thus, has expressly provided that the temporal limitation in § 7–11–20(B)(2) must be suspended during the current fiscal year. *See McLeod*, 256 S.C. at 26, 180 S.E.2d at 640 ("There is no doubt that the legislature has the power, where there is no constitutional prohibition, to suspend the operation of a statute. When such intention is clearly manifest this court has no choice but to give force and effect thereto.").

As additional evidence of legislative intent, it is instructive to note that the Governor vetoed provisos 79.6 and 79.12. In her veto message, the Governor wrote:

Prior to 2008, the taxpayers of South Carolina had never funded the First in the South Presidential Primary—instead, the political parties did. As I have made clear throughout the budget process, I believe private dollars are the appropriate way to fund a partisan Presidential Pri-

mary. The Attorney General of South Carolina has recognized that the State GOP can contract with the State Election Commission to run the primary. The United States Department of Justice has cleared an election conducted by the Election Commission and funded by a political party. The bottom line is this: South Carolina will host the First in the South Presidential Primary in 2012 and will be as successful as it always has been, but it should not fall on the taxpayers to cover the expense. For these reasons, we are vetoing these provisos.

Governor's Message to the Members of the General Assembly Transmitting Line–Item Vetoes of Portions of the 2011–2012 General Appropriations Act (June 28, 2011).

■ The Governor clearly understood the intent of the General Assembly to adhere to the 2008 public funding approach in fiscal year 2011–2012 and sought to oppose it.[3] The General Assembly, in turn, clearly understood the import and consequences of overriding the Governor's veto—the effect of the budget provisos was to suspend the temporal limitation in § 7–11–20(B)(2). A contrary construction of legislative intent would mean the Governor and the General Assembly were not aware what was intended by the provisos, a result which would border on frivolity.

Accordingly, we hold that provisos 79.6 and 79.12 suspend the temporal limitation in § 7–11–20(B)(2) and authorize the State Election Commission and the County Election Commissions to conduct Presidential Preference Primaries in 2012.[4] If they were not so construed, the provisos would authorize

---

3. Whether the expense of a Presidential Preference Primary should be borne by the political parties or the taxpayers is a policy decision, one that lies exclusively in the General Assembly.

4. The dissent accepts petitioners' argument that the budget provisos are merely permissive, allowing the State Commission to participate in the primaries should it choose to do so. We respectfully disagree. Ostensibly, the words "may" and "authorize" appear permissive, but such terms are commonly invoked in the context of budget provisos. The General Assembly, for example, routinely uses the word "may" in budget provisos in connection with an agency's ability to utilize a designated funding source. In the 2011–2012 Appropriations Act, the General Assembly used the word "may" in multiple budget provisos in addition to the ones in section 79. *See* Act No. 73, 2011 S.C. Acts §§ 1.7 (Governor's School for Science & Math); 1.13 (School Lunch

the State Election Commission to carry over certain funds to perform an unauthorized act, which would be an absurd result. *See Lancaster County Bar Ass'n v. S.C. Comm'n on Indigent Defense*, 380 S.C. 219, 670 S.E.2d 371 (2008) (holding that, in construing a statute, this Court will reject an interpretation which leads to an absurd result which could not have been intended by the General Assembly); *Gordon v. Phillips Util., Inc.*, 362 S.C. 403, 608 S.E.2d 425 (2005) (noting it is presumed that the General Assembly intended to accomplish something by its choice of words and would not do a futile thing); *Denene, Inc. v. City of Charleston*, 352 S.C. 208, 574 S.E.2d 196 (2002) (finding that this Court must presume the General Assembly did not intend a futile act, but rather intended its statutes to accomplish something).

## II. Sufficiency of Funds Appropriated for Presidential Preference Primary

Petitioners' argument that the funds appropriated for conducting a 2012 Presidential Preference Primary are insuffi-

---

Program Aid); 4.1 (School for the Deaf and the Blind); 22.36 (Department of Health & Environmental Control); 26.4 (Department of Social Services); 28.1 (Department of Archives & History); 38.1 (Sea Grant Consortium); 39.13 (Department of Parks & Recreation); 46.4 (Prosecution Coordination Commission); 65.1 (Department of Labor, Licensing & Regulation); 66.4 (Department of Motor Vehicles); 74.1 (Secretary of State). The General Assembly's approach to budget provisos for fiscal year 2011–2012, with its common usage of the term "may," was no different than its approach in prior years. Simply stated, the word "may" should not be viewed out of the budget proviso context in which it appears. An agency's authority to utilize a particular funding source does not transform the underlying legislation from a mandatory one to a permissive one.

Because we are tasked with ascertaining legislative intent, we further point to the fact that the House of Representatives rejected a proposed amendment to the provisos, which would have stricken the State Election Commission's and the County Election Commissions' duty to conduct the Presidential Preference Primaries. A statement by Representative Quinn and others was included in the House Journal:

While I support the idea of raising private funds to save tax dollars, I voted to table [the proposed amendment] for two major reasons. First, conducting elections is a core function of government. And no election is more important than the Presidency of the United States. Second, recent federal court cases and justice department decisions will potentially make a purely privately paid for election infeasible.
2011 House Journal March 15, 2011, p. 97 (statement of Rep. Richard Quinn, et al., regarding Amendment No. 71).

cient presents a nonjusticiable political question. Accordingly, we decline to address that argument. *Segars–Andrews v. Judicial Merit Selection Comm'n,* 387 S.C. 109, 691 S.E.2d 453 (2010); *S.C. Pub. Interest Found. v. Judicial Merit Selection Comm'n,* 369 S.C. 139, 632 S.E.2d 277 (2006); *see also State ex rel. Condon v. Hodges,* 349 S.C. 232, 562 S.E.2d 623 (2002); *Gilstrap v. S.C. Budget & Control Bd.,* 310 S.C. 210, 423 S.E.2d 101 (1992) (holding the appropriation of public funds is a legislative function); *Clarke v. S.C. Pub. Serv. Auth.,* 177 S.C. 427, 181 S.E. 481 (1935) (noting the General Assembly has full authority to make appropriations as it deems wise in absence of any specific constitutional prohibition against the appropriation).

## CONCLUSION

Having held the General Assembly has authorized and directed that Presidential Preference Primaries be conducted in South Carolina in 2012 by the State Election Commission and the County Election Commissions, we declare that such Presidential Preference Primaries shall be conducted in accordance with the provisions of S.C.Code Ann. § 7–11–20(B)(2) (Supp.2010) and Provisos 79.6 and 79.12 of Part II of the 2011–2012 General Appropriations Act, Act. No. 73, 2011 S.C. Acts §§ 79.6 and 79.12.

At the present time, the practical effect of this declaratory judgment is as follows: For the 2012 election cycle, the state committee of the Republican Party of South Carolina, a certified political party which received at least five percent of the popular vote in South Carolina for its presidential candidate in the 2008 General Election, has decided to hold a Republican Presidential Preference Primary Election on January 21, 2012. The State Election Commission and the County Election Commissions for each of the 46 counties must conduct this Presidential Preference Primary.

The only other political party in South Carolina which is eligible to conduct a Presidential Preference Primary is the South Carolina Democratic Party. Thus far, it has not decided to conduct such a primary. If it decides to do so, the State Election Commission and the County Election Commissions

will also be required to conduct such a primary pursuant to the above set forth provisions of state law.

Finally, it has been brought to the attention of the Court that the State Election Commission's website (*www.scvotes. org* ) advises that the proposed ballot for the January 21, 2012, South Carolina Republican Presidential Preference Primary will include candidates as follows: Michele Bachmann, Herman Cain, Newt Gingrich, Jon Huntsman, Gary Johnson, Ron Paul, Rick Perry, Mitt Romney, and Rick Santorum, and will also include four (4) nonbinding advisory questions. Nothing in the statutes upon which this declaratory judgment is rendered and no provision of South Carolina law would allow the ballot for a publically funded Presidential Preference Primary to include anything other than the names of candidates for a qualifying political party's nominee for President of the United States. Accordingly, the State Election Commission and the County Election Commissions are hereby directed that they may not print such ballots or conduct such primaries for any matter other than the nomination of party candidates for President of the United States. No advisory questions may be included on any such primary ballots. Additionally, no other advisory elections, straw polls, or the like on any question may be conducted at the various Presidential Preference Primary polling places or within 200 feet of the entrance to such polling places.

**JUDGMENT FOR RESPONDENTS.**

PLEICONES and KITTREDGE, JJ., concur. HEARN, J., dissenting in a separate opinion in which BEATTY, J., concurs.

Justice HEARN.

Respectfully, I concur in part and dissent in part. While I agree with the majority that the plain language of Section 7–11–20(B)(2) of the South Carolina Code (Supp.2010) is limited only to the 2008 election cycle, I believe the majority misapplies our precedents concerning appropriations provisos and erroneously concludes Provisos 79.6 and 79.12 suspend this temporal limitation. I would therefore find no requirement that either the State Election Commission or the county

election commissions conduct the 2012 Presidential Preference Primary.

I note at the outset that this case involves a non-binding presidential preference primary, rather than general elections and regular primaries which are unquestionably core functions of our State government. Hence, presidential preference primaries are excepted from the general statutes mandating the State and county commissions conduct primaries. *See* S.C.Code Ann. § 7–13–15(A)(2), (B)(1) (Supp.2010). I therefore begin with the premise that the State Commission and county commissions have no involvement in these preference primaries absent specific statutory authority.[5]

It has long been the law in this State that an appropriation act "has equal force and effect as a permanent statute" and can suspend the operation of a general law while it is in effect. *Plowden v. Beattie*, 185 S.C. 229, 236, 193 S.E. 651, 654 (1937). However, there must be an "irreconcilable conflict" between the appropriation and the general law before the latter is temporarily suspended. *Id.* We must therefore attempt to harmonize the statute and the budget proviso, for " '[i]f, by any reasonable construction, the two statutes can stand together, they must so stand. If harmony is impossible, and only in that event, the former law is repealed in part, or wholly, as the case may be.' " *State ex rel. McLeod v. Mills*, 256 S.C. 21, 26, 180 S.E.2d 638, 641 (1971) (quoting *State ex rel. Buchanan v. Jennings*, 68 S.C. 411, 415, 47 S.E. 683, 684 (1904)). Furthermore, "[i]t is well settled that statutes dealing with the same subject matter are *in pari materia* and must be construed together, if possible, to produce a single, harmonious result." *Joiner ex rel. Rivas v. Rivas*, 342 S.C. 102, 109, 536 S.E.2d 372, 375 (2000).

A review of the cases from our jurisprudence where a proviso has suspended a general law all involve precise and direct conflicts that are incapable of being harmonized. In *Buchanan*, the General Assembly passed an act setting the salary of a circuit judge at $3,000 per year. 68 S.C. at 412, 47

---

5. This is not to suggest that preference primaries are not elections. They are elections and accordingly are subject to state and federal laws concerning the electoral process. Nevertheless, they are subject to a different set of statutory procedures under our Code than regular primaries.

S.E. at 683. The next day, the General Assembly approved an appropriation which set a judge's salary at $3,500 per year. *Id.* As there was no possible way to harmonize this conflict, this Court held the appropriation suspended the statute. *Id.* at 415, 47 S.E. at 684. Similarly, in *Brooks v. Jones,* 80 S.C. 443, 61 S.E. 946 (1908), the General Assembly set the annual salary of the clerk of the Supreme Court at $800 by statute, but later passed an appropriation setting his salary at $1,000 per year. *Id.* at 448–49, 61 S.E. at 947 (Jones, J., concurring in part and dissenting in part). Once again, the Court held the appropriations bill could not be reconciled and suspended the operation of the statute. *Id.* at 449, 61 S.E. at 947.[6] The issue in *Plowden* was identical, with an appropriations bill changing (this time lowering) the salary for the Auditor of Clarendon County. 185 S.C. at 234, 193 S.E. at 653–54. After citing *Brooks, id.* at 236–37, 193 S.E. at 654–55, the Court held the appropriation act prevailed, *id.* at 241–42, 193 S.E. at 657. Finally, *McLeod* cited *Buchanan, Brooks,* and *Plowden* to hold that an appropriation's reduction of a salary set by statute controlled as long as the appropriation was in effect. 256 S.C. at 26–28, 180 S.E.2d at 640–42. Thus, in order for the majority's position to be correct, the provisos must be completely at odds with the general law.

As a threshold matter, I note that the majority and the parties themselves mistakenly identify the source of the perceived conflict with the provisos as being section 7–11–20(B)(2). As the majority correctly holds, that section by its very terms does not operate past the 2008 election cycle. Thus, the current budget provisos cannot conflict with the language "[f]or the 2008 election cycle"—or indeed any language in section 7–11–20(B)(2)—because it is not in effect for the 2011–2012 fiscal year. In other words, the notion that the provisos can suspend the temporal limitation in section 7–11–20(B)(2) is spurious because it is impossible to suspend some-

---

6. Chief Justice Pope and Acting Justice Gary simply adopted the order of the circuit court, which is not included in the Reporter. *Brooks,* 80 S.C. at 448, 61 S.E. at 947. Justice Jones, joined by Justice Woods, agreed that the appropriation could suspend the general law, and his vote made this the holding of the Court. *See id.* at 449, 61 S.E. at 947. (Jones, J., concurring in part and dissenting in part). His only disagreement was whether the appropriation could operate retroactively. *Id.* at 450, 61 S.E. at 947.

thing that is no longer in effect, as a prerequisite to finding a conflict is the existence of something to conflict with. Any conflict therefore must be between the provisos and the law as it currently stands, which is that the political parties themselves are responsible for the primaries.[7] *See* S.C.Code Ann. § 7–11–20(B)(1) (Supp.2010).

When the provisos are read together with the current law, I find no conflict. Proviso 79.6 states that filing fees from the political parties seeking to hold primaries *"may* also be utilized [by the State Commission] to conduct the 2012 Presidential Preference Primary elections." 2011 Act No. 73, Pt. 1 B § 79.6 (emphasis added). Proviso 79.12 provides that the State Commission is *"authorized* to carry forward and use funds originally appropriated for Ballot Security to conduct the 2012 Presidential Preference Primary elections." *Id.* § 79.12 (emphasis added). Rather than infringing at all on the responsibility of the political parties to conduct and run their primaries, Provisos 79.6 and 79.12 merely grant the State Commission the authority to participate should it choose to do so. Because the provisos complement the current law, I would hold that each should be given full effect. Thus, the responsibility for conducting the 2012 Presidential Preference Primary falls on the political parties, only to be supplemented by the State Commission in its discretion. Moreover, there is nothing in the provisos which would require the county commissions, or the State Commission for that matter, to shoulder the economic burden of a presidential preference primary. It is clear to me that the provisos envisioned different roles for the State and county commissions in 2012 than in 2008, and they provide no basis for us to resurrect and breathe new life into section 7–11–20(B)(2).

---

7. As to the majority's contention that we must compare the provisos to section 7–11–20(B)(2) because the latter is part of the permanent laws of this State, I believe the Code Commissioner's designation as such is of no moment. This subsection, by its very terms, is specifically limited to the 2008 election cycle and therefore does not survive following that election as posited by the majority. Moreover, contrary to the majority's suggestion, I do not believe that section 7–11–20(B) is inapplicable in its entirety. Instead, the only portion no longer in effect is what is limited to 2008, namely the requirements contained in subsection (B)(2). The remainder of the statute remains in effect and grants the political parties full authority to conduct the primary.

It is true that the General Assembly often uses the words "may" and "authorize" in various appropriations, and I agree that the recipient of those funds can be mandated to use them for a particular purpose. But for that to be true, a mandate must already exist. If not, all provisos would be converted into express commands that the funds appropriated must be spent. The fallacy in this case of concluding these permissive provisos are part of a mandate that the State Commission conduct the upcoming primary is the assumption that there is already a valid and existing mandate. The majority recognizes that outside of the provisos, no such mandate exists for 2012. Because the plain language of the provisos is purely permissive, I accordingly decline to read any compulsory terms into them. Finding otherwise is directly contrary to the cases holding we follow the plain language of a statute and that a general law is suspended only to the extent there is an "irreconcilable conflict." [8]

Not surprisingly, the majority fails to identify just what conflict requires the suspension of the temporal limitation. While an appropriations bill can certainly speak to other issues than salaries, I believe our prior cases are instructive because they illustrate just how irresoluble a conflict must be in order to suspend a general law. Commands to pay different salaries cannot be reconciled or harmonized, and therefore this Court correctly held in all of those cases that the salary provided for in the appropriations bill, be it higher or lower than that already provided by statute, controlled. No such conflict exists here. Had the provisos never been enacted, there would be no authority for either the State or county commissions to conduct the 2012 Presidential Preference Primary since the prior mandate imposed by section 7–11–20(B)(2) was limited to just "the 2008 election cycle." Consistent with years of prior practice and statutory authority, it is

---

8. While the General Assembly did include language in the appropriations bill stating conflicting provisions in the general law are suspended, that is nothing more than a recognition of the general rule. Nothing in this portion of the bill speaks to section 7–11–20(B)(2). Thus, the General Assembly did not "expressly provide[ ] that the temporal limitation in section 7–11–20(B)(2) must be suspended during the current fiscal year" as the majority contends. Rather, the General Assembly merely provided generally that to the extent there is any conflict with the provisos, the provisos control.

therefore the responsibility of the political parties to conduct the upcoming primary. Provisos 79.6 and 79.12, merely authorize the State Commission—and only the State Commission as they do not speak about the county commissions at all—to participate. These are readily harmonized, and I decline to read anything more into the provisos or out of the statute.

In support of its position, the majority turns to the statement of the Governor in her veto of the provisos and the General Assembly's override of that veto. However, the resolution of this important question turns solely on the impact of the provisos themselves, not on their veto by the Governor or the legislative override of that veto. Indeed, the fact that the majority must resort to such extrinsic aids is proof that the perceived conflict is not as self-evident as the majority suggests. In my view, holding that a subsequently enacted proviso supersedes a prior law is an extraordinary measure to be undertaken only when the conflict is clear on its face. I am also not persuaded that we should speculate as to what the override meant based on the limited record before us. *Cf. CFRE, LLC v. Greenville Cnty. Assessor,* 395 S.C. 67, 716 S.E.2d 877 (2011) (Shearouse Adv. Sh. No. 29 at 28–29) (holding that where the failure of the General Assembly to enact certain legislation could work equally to the advantage of both parties, it is error to rely on it).

The majority also writes that absent a suspension, the State Commission could carry over funds to do something it is not authorized to do, which would be an absurd result. However, the provisos themselves are sufficient to confer upon the State Commission the ability to participate in the 2012 primary even if section 7–11–20(B)(2) is no longer in effect. Thus, there is no absurd result because it can carry over funds for an authorized act. However, whether it and the county commissions are *required* to do so is an entirely different question. Because the provisos neither mention the county commissions nor speak in mandatory terms, I believe it is error to insert these requirements into section 7–11–20. *See Berkebile v. Outen,* 311 S.C. 50, 55–56, 426 S.E.2d 760, 763 (1993) (stating it is "improvident to judicially engraft extra requirements into legislation which is clear on its face").

As a final matter, I note that the majority is permitting Respondents to accomplish judicially what they either could not or would not do legislatively, despite repeated attempts. In enacting section 7–11–20(B)(2), a bill was proposed that would have eliminated any references to the 2008 election cycle. S. 1279 117th Gen. Assem. (S.C.2008). Another bill was introduced in 2011 that would have done the same. S. 794 119th Gen. Assem. (S.C.2011). In rejecting these proposals, the General Assembly manifested its intent that mandatory involvement on the part of the State and county commissions was limited to 2008. *See Stardancer Casino, Inc. v. Stewart,* 347 S.C. 377, 385 & n. 13, 556 S.E.2d 357, 361 & n. 13 (2001) (noting that the General Assembly's failure to enact two acts contemporaneous with the act in question is evidence that the provisions in the failed bills were not meant to be included). While the General Assembly very well could have required this again in 2012, either through another statutory amend-ment or the budget provisos, it did not do so.

In conclusion, I would hold that Provisos 79.6 and 79.12 merely grant the State Commission the authority to partici-pate in the 2012 Presidential Preference Primary.[9] However, I do not believe this grant of authority revives section 7–11–20(B)(2) because that provision was, by its terms, limited to the 2008 election cycle. Moreover, what the provisos *permit* the State Commission to do is not what the statute *required* the State and county commissions to do during the 2008 election cycle. While the counties should work with the political parties to ensure the smooth operation of the primary and access to polling places, I would hold that there is no statutory mandate that they conduct the primary at their own expense. Most assuredly, I would not place an even greater financial burden on the counties by permitting the inclusion of advisory questions on the primary ballot, and on that issue, I concur with the majority.

BEATTY, J., concurs.

---

9. In light of my resolution of this question, I would not reach the issue of the sufficiency of the funds appropriated for the presidential prefer-ence primary. However, if I were to reach it, I would agree with the majority that it presents a nonjusticiable political question.