632 S.E.2d 277

The SOUTH CAROLINA PUBLIC INTEREST FOUNDATION, and James M. Herring, Individually and on Behalf of All Others Similarly Situated, Appellants/Respondents,

v.

The JUDICIAL MERIT SELECTION COMMISSION, Senator James H. Ritchie, Jr., Representative F.G. Delleney, Jr., Senator Robert Ford, Representative Doug Smith, Senator Ray Cleary, Representative Fletcher N. Smith, Jr., John P. Freeman, Judge Curtis G. Shaw, Ms. Amy Johnson McLester, and Richard S. "Nick" Fisher, Respondents/Appellants.

No. 26164.

Supreme Court of South Carolina.

Heard June 7, 2006.

Decided June 8, 2006.

140

James G. Carpenter, of Greenville, for Appellant–Respondents.

Michael Robert Hitchcock and Mikell C. Harper, both of Columbia, for Respondent–Appellants.

Chief Justice TOAL.

The trial court found that the issue of whether the Judicial Merit Selection Commission (Commission) properly evaluated a candidate seeking election to a circuit court seat was a nonjusticiable political question. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

The South Carolina Public Interest Foundation (Foundation) and James Herring (Herring) brought the present action against the Commission and its members .in their official capacities on February 16, 2006. In this lawsuit, the Foundation and Herring challenge the Commission's determination that Carmen Tevis Mullen (Mullen) was qualified to seek election for the fourteenth judicial circuit, seat 2. In particular, the Foundation and Herring allege that the Commission was unreasonable in finding that Mullen was a resident of the fourteenth judicial circuit.

The record indicates that the Lowcountry Screening Committee raised concerns related to Mullen's residency to the Commission and the Commission considered those concerns in determining if Mullen was qualified to seek election for the fourteenth judicial circuit. The Foundation and Herring seek to have the Commission's finding that Mullen was qualified overturned because they contend Mullen is not a resident of the fourteenth circuit. Accordingly, the Foundation and Herring seek to have the election reopened for fourteenth judicial circuit, seat 2.

As a result, the Foundation sought a declaratory judgment by the trial court that the Commission did not adequately investigate whether Mullen met residency requirements for fourteenth judicial circuit, seat 2. Mullen was found qualified by the Commission and was subsequently elected by the South Carolina General Assembly. Mullen is not a party to this action.

The Commission moved to dismiss the claim pursuant to Rule 12(b)(6), SCRCP. The trial court found the Foundation failed to state facts sufficient to support a justiciable claim because the claim was moot and not proper for judicial review. The Foundation appealed and this Court certified the case pursuant to Rule 204(b), SCACR. As a result, the following issues are presented to the Court:

I.  Did the trial court err in determining that the issue is nonjusticiable?

II. Did the trial court err in granting the Commission's motion to dismiss pursuant to Rule 12(b)(6), SCRCP?

## LAW/ANALYSIS

### I. Justiciability

■ The Foundation and Herring argue that the trial court erred in determining that the issue was nonjusticiable.[1] We disagree.

■ The nonjusticiability of a political question is primarily a function of the separation of powers. *Baker v. Carr*, 369 U.S. 186, 210–11, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). "Deciding whether a matter has in any measure been committed by the Constitution to another branch of government, or whether the action of that branch exceeds whatever authority has been committed, is itself a delicate exercise in constitutional interpretation, and is a responsibility of this Court as ultimate interpreter of the Constitution." *Id.* at 211; *See Japan Whaling Ass'n v. Am. Cetacean Soc.*, 478 U.S. 221, 230, 106 S.Ct. 2860, 92 L.Ed.2d 166 (1986) (stating the political question doctrine, which derives from the separation of powers doctrine, excludes from judicial review those controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the halls of state legislatures or to the confines of the executive branch).

■ The fundamental characteristic of a nonjusticiable "political question" is that its adjudication would place a court

---

1. In addition to the separate of powers analysis, the circuit found the issue presented in the present case to be moot. In our view, the political question doctrine, as opposed to mootness dictates the decision in this case.

in conflict with a coequal branch of government. *U.S. v. Munoz–Flores,* 495 U.S. 385, 393–94, 110 S.Ct. 1964, 109 L.Ed.2d 384 (1990). Thus, the courts will not rule upon questions which are exclusively or predominantly political in nature rather than judicial. *Chicago & S. Air Lines v. Waterman S.S. Corp. Civil Aeronautics Brd.,* 333 U.S. 103, 111, 68 S.Ct. 431, 92 L.Ed. 568 (1948).

In addition to the authority cited above, this Court has declined to opine on issues where the Constitution delegates authority to the General Assembly. *See Stone v. Leatherman,* 343 S.C. 484, 484–85, 541 S.E.2d 241 (2001) (holding that the South Carolina Constitution provides the Senate with the authority to judge the election returns and qualifications of its own members). Likewise, other state courts have declined to answer political questions when Constitutional provisions grant the power to another branch of government. *See Ex. Rel. Turner v. Scott,* 98 Mich.App. 214, 296 N.W.2d 828, 830–31 (Iowa 1978) (holding that the determination of whether a senator was qualified to hold office because of questions regarding residency was the prerogative of the Senate pursuant to the Iowa State Constitution).

In the present case, the power to determine if a person is qualified to hold judicial office is vested with the General Assembly by the State Constitution. The South Carolina Constitution requires the General Assembly to establish a commission charged with the duty of determining if a person is qualified to be elected as a judge. S.C. Const. art. V, § 27. In addition, the Constitution proscribes that the General Assembly is to establish criteria for the Commission to consider when making the determination if a judicial candidate is qualified. *Id.; See also* S.C.Code Ann. § 2–19–35 (2005) (establishing the criteria for the Commission to consider when determining if a candidate is qualified to be elected to a judicial seat); and S.C.Code Ann. § 2–19–20(D) (2005) (providing that the Commission can conduct the investigation into a judicial candidate's background in any manner the Commission deems appropriate).

As the above cited statute indicates, the State Constitution, in unequivocal terms, vests the power to determine the qualifications for judicial candidates in the General Assembly. Were

we to review this case, this Court would be delving into the decision making process of the very body that determines whether the members of this Court are qualified to seek election to the bench. We decline to put the judiciary in a position that would interfere with the selection of its very own members. Accordingly, we hold that the issue of whether Mullen was properly qualified is a nonjusticiable political question.

■ The issue presented in the present case is distinguishable from other areas in which the Court reviews the actions of another coequal branch of government. For example, the South Carolina Code specifically gives this Court the power to review the decisions of administrative agencies that are under the umbrella of the executive branch. *See* S.C.Code Ann. § 1–2–380(A) (2005) (outlining the procedures for appealing a final decision of an administrative agency). In addition, this Court can review the actions of the General Assembly when the actions are unconstitutional. *See Hanvey v. Oconee Mem. Hosp.*, 308 S.C. 1, 4, 416 S.E.2d 623, 625 (1992) (stating that the Court can overturn an act of the General Assembly when the enactment is unconstitutional).

Under the present facts, the Foundation and Herring had other avenues to seek relief. Specifically, the complaining parties could properly challenge the residency of Mullen as provided for in the Code:

[o]nce a person is registered, challenges of the qualifications of any elector, except for challenges issued at the polls pursuant to 7–13–810, 7–13–820, and 7–15–420 must be made in writing to the board of registration in the county of registration. The board must, within ten days following the challenge and after first giving notice to the elector and the challenger, hold a hearing, accept evidence, and rule upon whether the elector meets or fails to meet the qualifications set forth in 7–5–120.

When a challenge is made regarding the residence of an elector, the board may consider the following proof to establish residence including, but not limited to, income tax returns; real estate interests; mailing address; address on driver's license; official papers and documents requiring the statement of residence address; automobile registration; checking and savings accounts; past voting record; mem-

bership in clubs and organizations; location of personal property; and the elector's statements as to his intent. S.C.Code Ann. § 7–5–230 (Supp.2005).

Accordingly, we hold that the issue presented in this case constitutes a political question not proper for judicial review.

## II. Summary Judgment

The Foundation and Herring argue the trial court erred in granting the Commission's motion to dismiss pursuant to Rule 12(b)(6), SCRCP. Because we hold that the case is not justiciable we do not reach the merits of the claims.[2]

### CONCLUSION

Based on the authority cited above, we hold that the question of whether the Commission properly determined the residence of Mullen or gave proper weight to the concerns of the Lowcountry Screening Committee presents a nonjusticiable political question that this Court should decline to answer. Accordingly, we affirm the trial court's decision.

MOORE, WALLER and BURNETT, JJ., and Acting Justice ROGER M. YOUNG, concur.

---

2. While we do not delve into the decision making process of the Judicial Merit Selection Committee, we do note that Mullen was a qualified elector from the Fourteenth Judicial Circuit at the time of her election as evidence in the Appellants' complaint. Further, the legislative history of S.C.Code Ann. § 14–5–610 (Supp.2005) does not reflect that the word "from" has any other meaning outside requiring that a person seeking a seat as a resident judge in a judicial circuit be a qualified elector of that circuit on the date of his or her election.