# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Robert Gantt and Edward K. White, Respondents,

v.

Samuel J. Selph as Director, and Marjorie Johnson, Adell Adams, E. Peter Kennedy, Sylvia Holley and Jane Emerson as the Members of the Board of Voter Registration and Elections of Richland County, The Board of Voter Registration and Elections of Richland County, and Kim Murphy, Defendants,

Of whom Kim Murphy is the Appellant.

Appellate Case No. 2016-002134

―――――――――

Appeal from Richland County
Jean Hoefer Toal, Circuit Court Judge

―――――――――

Opinion No. 27807
Submitted January 16, 2018 – Filed May 30, 2018

―――――――――

## AFFIRMED

―――――――――

Brian C. Gambrell, of The Law Offices of Jason E. Taylor, P.C., of Columbia, for Appellant.

Michael H. Montgomery, of Montgomery Willard, LLC, of Columbia, for Respondents.

―――――――――

**JUSTICE JAMES:** In this case, the circuit court ruled Appellant Kim Murphy was not qualified to be a candidate for election to a Richland County seat on the District 5 Richland-Lexington School Board of Trustees (School Board). The circuit court based this ruling on its conclusion that Murphy resides in Lexington County. We first hold the circuit court had subject matter jurisdiction over Respondents' declaratory judgment action challenging Murphy's qualifications. Second, we hold there is probative evidence in the record supporting the circuit court's conclusion that Murphy resides in Lexington County. Therefore, we affirm the circuit court's ruling that Murphy is not qualified to be a candidate for election to a Richland County seat on the School Board.

## FACTS AND PROCEDURAL HISTORY

Kim Murphy has lived at the same residence in Chapin since the year 2000. Murphy was registered to vote and voted in the Spring Hill Precinct of Richland County from 2000 to 2013 without controversy. In 2004 and 2010, Murphy filed to run for a Richland County seat on the School Board, and the Richland County Board of Voter Registration and Elections (Richland Election Board) accepted her candidate's application as a resident of Richland County both times. Murphy was elected to a Richland County seat on the School Board in 2010.

The dispute as to Murphy's qualifications as a candidate centers upon Act No. 326 of 2002, § 9 (Act No. 326), which provides that the School Board must be comprised of three residents of Richland County and four residents of Lexington County. Act No. 326 first became an issue after Murphy was elected in 2010. In 2012, the Office of Research and Statistics (an arm of the South Carolina Budget and Control Board), the body then charged with keeping official records of voting precincts and the location of county lines, conducted a routine screening of voter precinct assignments in Richland County.[1] During that screening, Murphy's residence was flagged as being in Lexington County. In March 2013, relying upon this information, the School Board determined Murphy was not a resident of Richland County and was instead a resident of Lexington County. The School Board removed Murphy from her seat for cause pursuant to section 59-19-60 of the South Carolina Code (2004). The School Board based its decision on Murphy not meeting the residency requirements prescribed by Act No. 326.

---

[1] The South Carolina Revenue and Fiscal Affairs Office is the successor to the Office of Research and Statistics.

In August 2016, Murphy filed to run against Respondent Robert Gantt in the November 2016 election for a seat representing Richland County on the School Board. Robert Gantt and Edward White (Respondents) petitioned the Richland Election Board, challenging Murphy's qualification as a Richland County *voter* pursuant to section 7-5-230 of the South Carolina Code (Supp. 2017). After a hearing, the Richland Election Board found Murphy was a qualified *voter* and allowed her to remain on the ballot. Respondents attempted to appeal to the circuit court; however, while section 7-5-230 would have allowed <u>Murphy</u> to appeal an adverse ruling, neither section 7-5-230 nor any other statute gave <u>Respondents</u> the right to appeal the Richland Election Board's conclusion that Murphy was a qualified *voter* in Richland County.

Respondents then commenced this declaratory judgment action in the circuit court. They seek a declaration that Murphy does not reside in Richland County and is therefore not qualified under Act No. 326 to be a candidate for a Richland County seat on the School Board. The circuit court ruled Murphy resides in Lexington County and is therefore not qualified to be a candidate for a Richland County seat on the School Board. This appeal followed.

## DISCUSSION

### A. Subject Matter Jurisdiction

Murphy claims the circuit court lacked subject matter jurisdiction to hear and decide Respondents' challenge to her qualifications as a candidate. We disagree.

"Subject matter jurisdiction is 'the power to hear and determine cases of the general class to which the proceedings in question belong.'" *Dove v. Gold Kist, Inc.*, 314 S.C. 235, 237-38, 442 S.E.2d 598, 600 (1994) (quoting *Bank of Babylon v. Quirk*, 472 A.2d 21, 22 (Conn. 1984)). Lack of subject matter jurisdiction may be raised at any time, and may be raised for the first time on appeal. *Linda Mc Co., Inc. v. Shore*, 390 S.C. 543, 557, 703 S.E.2d 499, 506 (2010). "The question of subject matter jurisdiction is a question of law." *Id.* at 551, 703 S.E.2d at 503 (quoting *Porter v. Labor Depot*, 372 S.C. 560, 567, 643 S.E.2d 96, 100 (Ct. App. 2007)). "An appellate court may decide questions of law with no particular deference to the trial court." *Id.*

As noted above, Respondents initially challenged Murphy's qualification to *vote* in Richland County by petitioning the Richland Election Board, claiming Murphy does not reside in Richland County. Article II, section 9 of the South Carolina Constitution provides that anyone denied registration to vote "shall have

the right to appeal to the court of common pleas, or any judge thereof, and thence to the Supreme Court, to determine his right to vote." This section further provides that "the General Assembly shall provide for such appeal." S.C. CONST. art. II, § 9. To "provide for such appeal," the General Assembly enacted subsection 7-5-230(C) of the South Carolina Code (Supp. 2017), which allows for an appeal to the court of common pleas by any person who is denied registration to vote by the local election board. The Richland Election Board determined Murphy was a qualified Richland County voter; therefore, she did not have to exercise her right to appeal.

Murphy argues section 7-5-230 and South Carolina common law make the executive branch—the Richland Election Board—the sole arbiter of not only her qualification to vote in Richland County, but also of her qualification to be a candidate for election to the School Board. Therefore, Murphy contends, the circuit court and this Court do not have subject matter jurisdiction over this dispute. We disagree.

Murphy's reading of section 7-5-230 is overly broad, as subsection 7-5-230(A) simply does not address the Richland Election Board's authority to do anything other than be the judge "of the legal qualifications of all applicants for registration" to vote. It does not apply to a person who files as a candidate for office. Pursuant to subsection 7-5-230(C), if Murphy's application for voter registration had been denied by the Richland Election Board, she could have appealed that denial to the circuit court. In such an event, sections 7-5-240 and 7-5-250 would have governed appellate proceedings before the circuit court and this Court. However, the instant dispute does not center upon Murphy's application for voter registration; rather, the dispute centers upon her qualification to be a candidate for election to the School Board. Therefore, section 7-5-230 does not apply to the dispute before us.

Likewise, South Carolina common law has not established the executive branch as the final authority on Murphy's eligibility to run for and hold a seat on the School Board. Murphy's reliance on *South Carolina Public Interest Foundation v. Judicial Merit Selection Commission*, 369 S.C. 139, 632 S.E.2d 277 (2006), and *Rainey v. Haley*, 404 S.C. 320, 745 S.E.2d 81 (2013), for this proposition is misplaced.

In *South Carolina Public Interest Foundation*, we held that a declaratory judgment action was an inappropriate vehicle for resolving the issue of residency of a judicial candidate. 369 S.C. at 142-44, 632 S.E.2d at 278-79. We explained we have no authority to rule on questions "exclusively or predominantly political in nature rather than judicial" and stated "[t]he fundamental characteristic of a

nonjusticiable 'political question' is that its adjudication would place a court in conflict with a coequal branch of government." *Id.* at 142-43, 632 S.E.2d at 278. The central premise of our conclusion that the dispute was a nonjusticiable political question was that article V, section 27 of the South Carolina Constitution specifically vested the General Assembly with the authority to investigate and determine the qualifications of judicial candidates. In turn, the General Assembly exercised this authority by enacting comprehensive legislation creating the Judicial Merit Selection Commission and giving it complete control over the investigation and determination of the qualifications of judicial candidates. *Id.* at 143, 632 S.E.2d at 279.

In the instant case, there is no such exclusive authority vested with the Richland Election Board by either the South Carolina Constitution or by statute to determine the qualifications of a candidate for election to the School Board. As noted above, article II, section 9 of the South Carolina Constitution addresses a person's right *to vote*; subsection 7-5-230(A) prescribes a procedure for challenges to a person's qualification to register *to vote*, and subsection 7-5-230(C) gives a person who applies to register *to vote* the right to appeal the Richland Election Board's refusal to approve such an application. There is no provision in the South Carolina Constitution, South Carolina Election Law,[2] Act No. 326, or any other statute granting authority to any executive or legislative entity to investigate and determine the qualifications of a candidate for election to the School Board.

Murphy's reliance on *Rainey* is likewise misplaced. In *Rainey*, the plaintiff sued Governor Haley in the circuit court, alleging that Governor Haley, while serving as a member of the House of Representatives, had violated certain provisions of the State Ethics Act.[3] 404 S.C. at 322, 745 S.E.2d at 82. We held the circuit court did not have subject matter jurisdiction in such a case for two basic reasons. First, article III, sections 11 and 12 of the South Carolina Constitution grant the General Assembly authority over the conduct of its own members, and second, the General Assembly had adopted a comprehensive statutory scheme, the State Ethics Act, for regulating the behavior of elected officials, including those who serve in the General Assembly. *Id.* at 323-27, 745 S.E.2d at 83-85. To enforce the State Ethics Act, the General Assembly created both the Senate and House Legislative Ethics Committees. *Id.* at 324, 745 S.E.2d at 83. We concluded it was clear the General

---

[2] The South Carolina Election Law is set forth in Title 7 of the South Carolina Code (1976 & Supp. 2017).

[3] S.C. Code Ann. §§ 8-13-100 to -1520 (1986 & Supp. 2017).

Assembly intended the respective Legislative Ethics Committees to have exclusive authority to hear allegations of ethics violations of its own members and staffs.  *Id.*

We again note there is no specific constitutional provision or statutory provision giving the Richland Election Board the exclusive authority—or any authority for that matter—to determine the qualifications of a candidate for election to the School Board.  "In determining whether the Legislature has given another entity exclusive jurisdiction over a case, a court must look to the relevant statute." *Rainey*, 404 S.C. at 323, 745 S.E.2d at 83 (quoting *Dema v. Tenet Physician Servs.— Hilton Head, Inc.*, 383 S.C. 115, 121, 678 S.E.2d 430, 433 (2009)).  As we have repeatedly noted, careful examination of section 7-5-230 reveals the Richland Election Board's authority is limited to determining the qualifications of a person who applies to register to vote, not the qualifications of a person who applies to be a candidate for election to the School Board.

In the absence of exclusive authority vested in another branch of government, Respondents are entitled to pursue relief pursuant to the Uniform Declaratory Judgments Act,[4] which provides in pertinent part:

> Courts of record within their respective jurisdictions shall have power to declare rights, status and other legal relations whether or not further relief is or could be claimed.  No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for.  The declaration may be either affirmative or negative in form and effect.  Such declarations shall have the force and effect of a final judgment or decree.

S.C. Code Ann. § 15-53-20 (2005).

Now that we have determined that the circuit court had subject matter jurisdiction over this declaratory judgment action, we must examine the factual and legal bases of the circuit court's ruling.  This Court has adopted the "any evidence" standard of review of findings of fact in appeals from decisions of the State Board of Canvassers and in municipal election disputes.  *See Knight v. State Bd. of Canvassers*, 297 S.C. 55, 57, 374 S.E.2d 685, 686 (1988) (holding that in an appeal from a decision by the State Board of Canvassers, this Court's review is limited to

---

[4] S.C. Code Ann. §§ 15-53-10 to -140 (2005).

correcting errors of law, and the Board of Canvassers' findings of fact shall not be overturned unless wholly unsupported by the evidence); *see also Taylor v. Town of Atl. Beach Election Comm'n*, 363 S.C. 8, 12, 609 S.E.2d 500, 502 (2005) (providing in municipal election cases, this Court reviews the judgment of the circuit court only to correct errors of law, and this Court must accept the circuit court's factual findings unless they are wholly unsupported by the evidence). Under this deferential standard, the findings of fact reached by the lower tribunal cannot be disturbed if there is any probative evidence in the record supporting the findings. While the instant case does not involve either a municipal election or a decision of the State Board of Canvassers, we conclude we must apply the "any evidence" standard of review.

The circuit court analyzed the evidence in great detail and noted, among other things, the following: (1) Lexington County tax maps show Murphy's residence to be in Lexington County, (2) Richland County tax maps show her residence to be in Richland County, (3) Lexington County and Richland County Geographic Information System (GIS) maps show her residence to be in Lexington County, (4) official State precinct maps show her residence to be in Lexington County, and (5) expert testimony established her residence is approximately 1000 feet inside Lexington County. Although Murphy was registered to vote in Richland County and paid real and personal property taxes in Richland County, and although there was a "gentlemen's agreement" between the Richland and Lexington County Assessors to treat the Murphy residence as being in Richland County, the circuit court rejected those factors when weighing the totality of the evidence. The circuit court's determination that Murphy resides in Lexington County is supported by probative evidence in the record.

## B. Boundary Dispute

Murphy next contends the circuit court, in finding she is a resident of Lexington County, improperly resolved a non-existent border dispute between Richland and Lexington Counties. We disagree.

Subsection 27-2-105(A)(1) of the South Carolina Code (Supp. 2017) provides, "The South Carolina Geodetic Survey (SCGS) shall seek to clarify the county boundaries as defined in Chapter 3, Title 4." Subsection 27-2-105(A)(2) provides, "If there is a boundary dispute between two or more counties, the SCGS shall act as the mediator to resolve the dispute." Lexington and Richland Counties' borders are defined in sections 4-3-370 and -460 of the South Carolina Code (1986), respectively. Section 27-2-105 provides that an appeal of SCGS's determination of

a county line is to be held in the Administrative Law Court; however, section 27-2-105 does not prohibit the circuit court from using data compiled by SCGS to assist the court in determining where a residence is located in connection to a county line. Nothing in section 27-2-105 limits the use of SCGS data as evidence of Murphy's county of residence in this case. Therefore, Murphy's argument fails.

## CONCLUSION

Act No. 326 clearly requires Murphy to be a resident of Richland County for her to be qualified to run for a Richland County seat on the School Board. Section 7-5-230 applies only to a review of the Richland Election Board's determination of a person's qualification to vote. There is no constitutional provision or statute granting exclusive authority to any entity to determine the qualifications of a candidate seeking election to the School Board. The circuit court therefore had subject matter jurisdiction over Respondents' declaratory judgment action, and there is evidence in the record supporting the circuit court's finding that Murphy does not reside in Richland County. Therefore, the circuit court's declaration that Murphy is not qualified to be a candidate for a Richland County seat on the School Board is **AFFIRMED**.

**KITTREDGE, Acting Chief Justice, HEARN and FEW, JJ., concur. BEATTY, C.J., not participating.**