# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Rhodes Bailey, Robert Wehrman, South Carolina Democratic Party, and DCCC, Plaintiffs-Petitioners,

v.

South Carolina State Election Commission and Marci Andino as Executive Director of the State Election Commission, Defendants-Respondents,

and South Carolina Republican Party, Intervenor.

Appellate Case No. 2020-000642

---

## ORIGINAL JURISDICTION

---

Opinion No. 27975
Heard May 12, 2020 – Filed May 27, 2020

---

## DISMISSED

---

Christopher James Bryant and Bruce V. Spiva, both of Perkins Coie, LLP, of Washington, D.C., for Plaintiffs-Petitioners.

William Grayson Lambert and Mary Elizabeth Crum, of Burr & Forman, LLP; Karl Smith Bowers Jr., of Bowers Law Office; J. Robert Bolchoz, of Robert Bolchoz, LLC; and Harrison D. Brant, of the South Carolina Election Commission, all of Columbia, for Defendants-Respondents.

Robert E. Tyson, Jr. and Vordman Carlisle Traywick III, both of Robinson Gray Stepp & Laffitte, LLC, of Columbia, for Intervenors.

Attorney General Alan McCrory Wilson, Deputy Solicitor General J. Emory Smith Jr., and Assistant Attorney General Harley Kirkland, all of the South Carolina Attorney General's Office, of Columbia, for Amicus Curiae.

**JUSTICES KITTREDGE, FEW, JAMES:** Plaintiffs[1] contend in this lawsuit that—in the face of the COVID-19 pandemic—existing South Carolina law permits all South Carolina registered voters to vote by absentee ballot in the June 9, 2020 primary election and November 3, 2020 general election. Plaintiffs implicitly contend that if existing law does not permit this, it should. Plaintiffs ask that we hear this case in our original jurisdiction. *See Key v. Currie*, 305 S.C. 115, 116, 406 S.E.2d 356, 357 (1991) (only if an extraordinary reason exists, such as a question of significant public interest or an emergency, will the Court hear a case in its original jurisdiction). We allowed the South Carolina Republican Party (SCGOP) to intervene. The SCGOP filed a motion to dismiss. We granted the Attorney General permission to submit an *amicus curiae* memorandum.

We grant the request to hear the case in our original jurisdiction. We respectfully decline to dismiss the case on any of the grounds argued in the SCGOP motion. As we will explain, however, we dismiss the case on the ground that it does not present a justiciable controversy.

## I.

Although this case does not present a constitutional challenge,[2] we begin with the

---

[1] Plaintiffs Bailey and Wehrman are candidates in the Democratic primary.

[2] As much as the dissent may wish otherwise, Plaintiffs' Complaint presents only a question of statutory construction. Plaintiffs' counsel confirmed at oral argument that Plaintiffs do not challenge the constitutionality of South Carolina's absentee voting statutes. We respectfully reject the dissent's effort to recast this lawsuit. In any event, we are not persuaded that the dissent's reframing of the question presented to the Court would permit the result the dissent desires.

unassailable proposition which all participants acknowledge: the right to vote is a cornerstone of our constitutional republic. *See Ill. Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184, 99 S. Ct. 983, 990, 59 L. Ed. 2d 230, 241 (1979) ("[V]oting is of the most fundamental significance under our constitutional structure."); *Wesberry v. Sanders*, 376 U.S. 1, 17, 84 S. Ct. 526, 535, 11 L. Ed. 2d 481, 492 (1964) ("No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live."); *see also* S.C. Const. art. I, § 5 ("All elections shall be free and open, and every inhabitant of this State possessing the qualifications provided for in this Constitution shall have an equal right to elect officers and be elected to fill public office."); S.C. Const. art. II, § 1 ("The right of suffrage, as regulated in this Constitution, shall be protected by laws regulating elections and prohibiting, under adequate penalties, all undue influence from power, bribery, tumult, or improper conduct."); S.C. Const. art. II, § 2 ("No power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage in this State."); *Sojourner v. Town of St. George*, 383 S.C. 171, 176, 679 S.E.2d 182, 185 (2009) ("The right to vote is a fundamental right protected by heightened scrutiny under the Equal Protection Clause. Restrictions on the right to vote on grounds other than residence, age, and citizenship generally violate the Equal Protection Clause and cannot stand unless such restrictions promote a compelling state interest." (internal citations omitted)); *City of Charleston v. Masi*, 362 S.C. 505, 509, 609 S.E.2d 301, 304 (2005) (noting the critical importance of ensuring voters are not improperly denied their right to vote in a particular election). As we stated in another election case in which this Court issued a declaratory judgment in its original jurisdiction, "This is a matter of great public importance. Integrity in elections is foundational." *Anderson v. S.C. Election Comm'n*, 397 S.C. 551, 556, 725 S.E.2d 704, 706 (2012).

The voting laws implicated in this case are South Carolina statutes governing absentee voting. Pursuant to subsection 7-15-320(A) of the South Carolina Code (2019), absentee ballots may be used by certain voters who are unable to vote in person because they are absent from their county of residence on election day during the hours the polls are open. Subsection 7-15-320(B) allows voters to cast absentee ballots when they are not absent from the county, but only if they fit into one of the listed categories of people eligible to vote by absentee ballot. One of these categories is "physically disabled persons." § 7-15-320(B)(1).[3] Subsection

---

[3] Among the other categories of voters eligible under the statute to vote absentee without a requirement of absence from the county are persons attending sick or physically disabled persons; persons admitted to hospitals as emergency patients

7-15-310(4) of the South Carolina Code (2019) defines "physically disabled person" as "a person who, because of injury or illness, cannot be present in person at his voting place on election day." Plaintiffs ask the Court to construe the term "physically disabled person" to include those practicing social distancing to avoid contracting or spreading the illness COVID-19. Plaintiffs contend these voters, "because of . . . illness, cannot be present in person" at the voting place on election day under subsection 7-15-310(4), and thus are "physically disabled persons" under subsection 7-15-320(B)(1). This construction of the term "physically disabled person," Plaintiffs argue, permits all registered voters to vote by absentee ballot if they choose.

## II.

We will dismiss any case that does not present a justiciable controversy. *Byrd v. Irmo High Sch.*, 321 S.C. 426, 430, 468 S.E.2d 861, 864 (1996). On Tuesday, May 12—the day this Court heard oral argument on Plaintiffs' request that we construe the term "physically disabled person" to include any voter practicing social distancing to avoid contracting or spreading COVID-19—our Legislature met to consider whether it should make any changes to our election law in light of the COVID-19 pandemic. Both the House and the Senate enacted legislation to temporarily change the law. The bill provides,

> A qualified elector must be permitted to vote by absentee
> ballot in an election if the qualified elector's place of
> residence or polling place is located in an area subject to
> a state of emergency declared by the Governor and there
> are fewer than forty-six days remaining until the date of
> the election.

Act No. 133, § 2A, 2020 S.C. Acts ___.

The next day—May 13—the Governor signed the bill into law. Because the entire State is currently under a "state of emergency as declared by the Governor," S.C. Exec. Order No. 20-35 at 9 (May 12, 2020), and "there are fewer than forty-six

---

on the day of an election or within a four-day period before the election; persons with a death or funeral in the family within a three-day period before the election; and persons sixty-five years of age or older. S.C. Code Ann. § 7-15-320(B)(4), (5), (6), and (8).

days" between now and the June primary, all South Carolina voters are permitted to vote in the primary by absentee ballot, if they choose. This action by our Legislature and Governor enacted into law the precise relief Plaintiffs request—as to the primary election. By its terms, however, the legislation expires on July 1, 2020. Act No. 133, § 2B.

Act 133 has two effects relating to whether the case before us presents a justiciable question. First, Plaintiffs' claim that all voters should be permitted to vote by absentee ballot in the June 9 primary election is now moot. *See Curtis v. State*, 345 S.C. 557, 567, 549 S.E.2d 591, 596 (2001) (stating a "court will not pass on moot . . . questions").

Second, though the new law expires on July 1, and thus does not moot Plaintiffs' claim as to any election after that date, the fact the Legislature changed the law to permit every voter to vote in the primary by absentee ballot is a clear indication the absentee voting statutes did not already permit that. To explain, if existing law already permitted all voters to vote by absentee in the face of a pandemic, it would have been unnecessary for the Legislature to change the law. In addition, by providing the new law "expires," the Legislature essentially reenacted the old law as of July 1. This makes clear the Legislature's intent that—under the old law reenacted—all voters may not vote by absentee ballot in the face of a pandemic. The question Plaintiffs raise is whether existing law permits all voters to vote by absentee ballot. The Legislature answered that question, "No"; it took a change in the law for that to be true. The change in the law means the answer is now, "Yes." But the law expires, by which the Legislature deliberately changed the answer back to, "No," after July 1. There is no way to interpret these changes other than as a legislative determination that subsection 7-15-320(B)(1) does not permit all voters to vote absentee in the face of a pandemic. Therefore, the only voters who may vote by absentee ballot after July 1 are those who fit into one of the listed categories in subsection 7-15-320(A) or (B). If there were any doubt that subsection 7-15-320(B)(1) does not permit what Plaintiffs claim it does, that doubt was removed by the Legislature's effective reenactment of the subsection with the clear intention of repealing the temporary provision that allowed all voters to vote absentee.

The dissent argues that Plaintiffs' claim relating to elections after July 1—in addition to the constitutional question—presents a question of statutory interpretation, not a political question. We certainly agree statutory interpretation is within the province of this Court. In fact, what we articulated in the previous paragraph is our construction of subsection 7-15-320(B)(1) as the Legislature

intends it after July 1, not based on its plain language or the canons of construction, but based on the Legislature's political act of reenacting the subsection after temporarily changing the law. We hold the question is now a political question because the Legislature answered the question of statutory interpretation with absolute clarity when it changed the law to permit all voters to vote absentee, and then sunset the new law for elections held after July 1.

Statutory interpretation is certainly a judicial question, but when the Legislature considers the very same question—knowing it is doing so at the very same time the Court considers the question—and answers the question with clarity, we cannot give a different answer through the judicial act of statutory interpretation. We may do so only by the political act of simply disagreeing. This Court will not do it.

Plaintiffs are left, therefore, only with their implicit argument as to what the law should be, that is, that this Court should change the law. As for the June primary election, the Legislature has determined that all voters may vote absentee. As for elections after July 1, 2020, we hold that whether any change should be made to the law is a political question for the Legislature likewise to answer. *See S.C. Pub. Interest Found. v. Judicial Merit Selection Comm'n*, 369 S.C. 139, 142-44, 632 S.E.2d 277, 278-79 (2006) (explaining that this Court will not answer political questions). To consider this political question, the House and Senate by joint resolution Tuesday, May 12 set September 15, 2020 (or earlier at the call of the Senate President or House Speaker) to resume the legislative session. *See* S. Con. Res. 1194, 123d Gen. Assemb., 2d Reg. Sess. (S.C. 2020). The joint resolution specifically contemplates the Legislature may consider "introduction, receipt, and consideration of legislation concerning COVID-19 and related matters" at any time up to November 8, 2020. S. Con. Res. 1194 §§ (D)(10), (E)(6). This provision of the joint resolution keeps us mindful that it is the Legislature which bears the constitutional obligation to ensure that elections are carried out in such a manner as to allow all citizens the right to vote. "The General Assembly shall provide for the nomination of candidates, regulate the time, place, and manner of elections, provide for the administration of elections and for absentee voting." S.C. Const. art. II, § 10.

Pursuant to that constitutional obligation, the Legislature has determined that subsection 7-15-320(B)(1) does not permit all voters to vote absentee, and the Legislature has jointly resolved to return to session in September to consider whether that law should be changed—again—for the November election. There is no way for this Court to grant Plaintiffs the relief they seek without disagreeing with the Legislature on this political question. If conditions in the Fall warrant

another change in our election law, and if the will of the people as expressed through their legislative representatives is that such a change be made, the Legislature may change the law.  This Court, however, will not.  *See* S.C. Const. art. I, § 8 ("In the government of this State, the legislative, executive, and judicial powers of the government shall be forever separate and distinct from each other, and no person or persons exercising the functions of one of said departments shall assume or discharge the duties of any other.").

### III.

We grant the motion to hear this case in our original jurisdiction.  Having carefully reviewed the matter, we dismiss the case.

**DISMISSED.**

**KITTREDGE, FEW, and JAMES, J.J., concur.  HEARN, J., concurring in part and dissenting in part in a separate opinion in which BEATTY, C.J., concurs.**

**JUSTICE HEARN:** I agree with the majority's decision to grant Plaintiffs' request to hear this case in our original jurisdiction, decline to dismiss the case on the grounds argued in the SCGOP's motion, and dismiss Plaintiffs' complaint as moot with respect to the June primary. *Sloan v. Friends of Hunley, Inc.*, 369 S.C. 20, 25, 630 S.E.2d 474, 477 (2006) ("Generally, this Court only considers cases presenting a justiciable controversy."); *Id.* at 26, 630 S.E.2d at 477 ("A moot case exists where a judgment rendered by the court will have no practical legal effect upon an existing controversy because an intervening event renders any grant of effectual relief impossible for the reviewing court. If there is no actual controversy, this Court will not decide moot or academic questions." (internal citation omitted)).

However, I part company with the majority in its haste to dismiss the action with finality as it relates to the general election on the theory that a political question is presented.[4] I view the issue before us not as a political question but rather a question of statutory interpretation, which is clearly within the province of this Court. *Marbury v. Madison*, 5 U.S. 137, 177 (1803) ("[I]t is emphatically the province and duty of the judicial department to say what the law is."); *Abbeville Cty. Sch. Dist. v. State*, 410 S.C. 619, 632, 767 S.E.2d 157, 163-64 (2014) ("This hallowed observation is the bedrock of the judiciary's proper role in determining the constitutionality of laws, and the government's actions pursuant to those laws."); 82 C.J.S. *Statutes* § 368 (2009) (noting the interpretation and construction of statutory language presents a question of law for the court to decide). The General Assembly, in enacting the legislation, rendered the question before us moot with respect to the June primary, but it did not settle the ultimate issue at hand—the statutory construction of "physically disabled persons" in the absentee voting statutes consonant with the constitutional mandate for free and open elections. S.C. Const. art. I, § 5 ("All elections shall be free and open, and every inhabitant of this State possessing the qualifications provided for in this Constitution shall have an equal right to elect officers . . . ."). While it is the responsibility of the General Assembly to "provide for the administration of elections and for absentee voting," it remains the duty of this Court to ensure that statutes enacted by the Legislature are constitutionally valid. S.C. Const. art. II, § 10; *Boyd v. United States*, 116 U.S. 616, 635 (1886) ("It is the duty of courts to be watchful for the constitutional rights of the

---

[4] While none of the parties specifically argued the applicability of the political question doctrine in this case, I recognize this doctrine falls under the umbrella of Article I, Section 8 separation of powers generally. *S.C. Pub. Interest Found. v. Judicial Merit Selection Comm'n*, 369 S.C. 139, 142, 632 S.E.2d 277, 278 (2006) ("The nonjusticiability of a political question is primarily a function of the separation of powers.").

citizen . . . ."); *Peoples Nat'l Bank of Greenville v. S.C. Tax Comm'n*, 250 S.C. 187, 192, 156 S.E.2d 769, 772 (1967) (noting this Court has a duty to adopt a statutory construction which conforms to constitutional requirements); *Moseley v. Welch*, 209 S.C. 19, 27, 39 S.E.2d 133, 137 (1946) ("[T]he provisions of our State Constitution are not a grant but a limitation of legislative power, so that the General Assembly may enact any law not expressly, or by clear implication, prohibited by the State or Federal Constitution."). I reject the majority's assertion that I have reframed or recast the issue as a constitutional challenge but instead explain that this Court cannot ignore the constitutional ramifications of the statutory construction question presented. Although I agree with the premise that we generally answer only the questions specifically posited to us, we do not construe statutes in a vacuum, but rather in the shadow of the Constitution. Indeed, were this Court able to address the question of statutory construction raised here, we would inevitably have to determine whether our interpretation is consistent with the free and open elections clause of our Constitution, as both Plaintiffs and the SCGOP acknowledged at oral argument.[5]

My review of our jurisprudence does not support the majority's reliance on the political question doctrine. In *Alexander v. Houston*, 403 S.C. 615, 619, 744 S.E.2d 517, 520 (2013), we rejected the trial court's determination that a legal challenge under our Constitution's dual office holding provision was a nonjusticiable political question. Instead, we held the question presented a "bona fide legal challenge" that was proper for judicial resolution. *Id.* We further stated "this Court is duty bound to review the actions of the Legislature . . . ." *Id.* at 619, 744 S.E.2d at 519-20. Similarly, in *Abbeville County School District v. State*, 335 S.C. 58, 67, 515 S.E.2d 535, 539 (1999), we reversed the trial court's decision to rely on the political question doctrine as the basis for declining to interpret a constitutional provision. Finally, in *Sloan v. Hardee*, 371 S.C. 495, 500, 640 S.E.2d 457, 459-60 (2007), we held that the interpretation of the phrase "more than one consecutive term" in section

---

[5] Although Plaintiffs did not specifically plead a cause of action challenging the constitutionality of the absentee voting statute, they nevertheless explained at oral argument that the canon of constitutional avoidance requires this Court to interpret the statute in such a manner so as not to raise constitutional concerns. *Boumediene v. Bush*, 553 U.S. 723, 787 (2008) (holding the Supreme Court has an obligation to construe a statute to avoid constitutional problems "if it is fairly possible to do so"). Counsel further argued that if we were to find that people practicing social distancing were not included in the term "physically disabled persons," such an interpretation would run afoul of the free and open elections clause of our Constitution. The SCGOP's counsel also conceded this Court undoubtedly must construe the statute in light of the free and open elections clause.

57-1-320(B) to determine whether the statute had been violated was not a political question and "clearly within the prerogative of this Court." Indeed, these decisions demonstrate our reluctance to relinquish our judicial authority to decide "bona fide legal challenges" and to interpret statutory and constitutional provisions, unless a political question is clearly presented. *See Alexander*, 403 S.C. at 619, 744 S.E.2d at 519 ("[T]he political question doctrine is one of political questions, not one of political cases." (internal quotation marks omitted)).

Moreover, the action or inaction of the General Assembly does not determine whether a question is political, and therefore, nonjusticiable. *See Doran v. Robertson*, 203 S.C. 434, 445, 27 S.E.2d 714, 718 (1943) ("The Legislature cannot finally determine the limits of its power under the Constitution; that is a fundamental function of the courts. But it is so high a prerogative that it should be exercised with utmost care and circumspection." (internal citation omitted)). Rather, it is the responsibility of this Court to decide on a case-by-case basis whether a nonjusticiable political question is presented. *Baker v. Carr*, 369 U.S. 186, 211 (1962) ("Deciding whether a matter has in any measure been committed by the Constitution to another branch of government, or whether the action of that branch exceeds whatever authority has been committed, is itself a delicate exercise in constitutional interpretation, and is a responsibility of this Court as ultimate interpreter of the Constitution."); *Segars-Andrews v. Judicial Merit Selection Comm'n*, 387 S.C. 109, 122, 691 S.E.2d 453, 460 (2010) ("In determining whether a question is political and nonjusticiable, the appropriateness under our system of government of attributing finality to the action of the political departments and also the lack of satisfactory criteria for a judicial determination are dominant considerations." (quoting *Coleman v. Miller*, 307 U.S. 433, 454-55 (1939)); *Id.* ("[C]onsideration of the cause is not wholly and immediately foreclosed; rather, the Court's inquiry necessarily proceeds to the point of deciding whether the duty asserted can be judicially identified and its breach judicially determined, and whether protection for the right asserted can be judicially molded." (quoting *Baker*, 369 U.S. at 198)). While I acknowledge that whether the political question doctrine applies is a threshold question for this Court, none of the parties to the litigation have briefed or had the opportunity to orally argue this specific issue. Therefore, I believe it would be most prudent to reserve judgment.

Further, in my view, the General Assembly's action in passing the temporary legislation does not necessarily resolve the issue of whether persons practicing social distancing to avoid contracting or spreading this serious, highly communicable disease are included within the plain and ordinary meaning of "physically disabled persons," as defined in Section 7-15-310(4) of the South Carolina Code of Laws

(2019) and allowed to vote by absentee ballot pursuant to section 7-15-320(B)(1). *See Brown v. Thompson*, 374 F.3d 253, 259 (4th Cir. 2004) ("[W]hen an amendment alters, even 'significantly alters,' the original statutory language, this does 'not necessarily' indicate that the amendment institutes a change in the law."). *See also Baldwin v. City of Greensboro*, 714 F.3d 828, 837 (4th Cir. 2013). Indeed, the recent legislation simply provides that "[a] qualified elector must be permitted to vote by absentee ballot in an election if the qualified elector's place of residence or polling place is located in an area subject to a state of emergency . . . ." Act No. 133, § 2A (S.C. 2020). It did not *amend* section 7-15-310(4) or 7-15-320(B)(1) to temporarily allow all registered voters, in light of the COVID-19 pandemic, to vote by absentee ballot under the "physically disabled persons" provision. Accordingly, the legislation does not directly address the question of statutory interpretation before the Court, and I would decline to dismiss the suit on this basis. Instead, I would dismiss the complaint on the ground that the matter involving the general election is not yet ripe for judicial consideration, which would not foreclose a future suit requesting interpretation of the provision for the general election. *S. Bank & Tr. Co. v. Harrison Sales Co., Inc.*, 285 S.C. 50, 51, 328 S.E.2d 66, 67 (1985) ("A declaratory judgment action must involve an actual, justiciable controversy."); *Jowers v. S.C. Dep't of Health & Envtl. Control*, 423 S.C. 343, 353, 815 S.E.2d 446, 451 (2018) ("We have explained ripeness by defining what is not ripe, stating an issue that is contingent, hypothetical, or abstract is not ripe for judicial review." (quoting *Colleton Cty. Taxpayers Ass'n v. Sch. Dist. of Colleton Cty.*, 371 S.C. 224, 242, 638 S.E.2d 685, 694 (2006)); *Park v. Safeco Ins. Co. of Am.*, 251 S.C. 410, 414, 162 S.E.2d 709, 711 (1968) ("The courts generally decline to pronounce a declaration in a suit wherein the rights of the plaintiff are contingent upon the happening of some event which cannot be forecast and which may never take place."). For these reasons, I concur in part and dissent in part.

**BEATTY, C.J., concurs.**